ROCKPORT & P. A. R. CO. v. STATE.

(Court of Civil Appeals of Texas. Feb. 8, 1911. Rehearing Denied March 8, 1911.)

1. PUBLIC LANDS (§ 172*)—RAILROAD RIGHT OF WAY—GRANTS.

Under Const. art. 10, § 1, authorizing railroads to construct lines between any points within the state, and Rev. St. 1895, art. 4423, giving a right of way over state lands, a domestic company can construct its road over tide water lands and islands of the state without specific legislative authority, but not through lands specially set apart for a quarantine station, regardless of whether the whole tract is actually used for that purpose.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 172.*]

2. EMINENT DOMAIN (§ 46*) — RAILROADS— PUBLIC PROPERTY.

Property held by the state or by the United States for sale or settlement may be taken for railroad purposes, but not where the land has been devoted to a particular use of the government.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 91–93; Dec. Dig. § 46.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the State of Texas against the Rockport & Port Aransas Railroad Company. Judgment for plaintiff, and defendant appeals. Partly reversed and remanded, and partly affirmed.

W. H. Baldwin and Gregory, Batts & Brooks, for appellant. Jewel P. Lightfoot, Atty. Gen., John L. Terrell, Asst. Atty. Gen., and L. A. Dale, Asst. Atty. Gen., for the State.

RICE, J. We take the following statement of the case from appellant's brief; it being concurred in by appellee: "On November 14,

1910, the state of Texas, acting through her Attorney General, filed suit in the district court of Travis county, No. 26,685, against the Rockport & Port Aransas Railroad Company, alleging that the Legislature had at a previous date established on the eastern shore of Harbor Island on the gulf coast of Texas a quarantine station, and that thereafter the Legislature had set apart for the use of said station a strip of land on said island; that this land had been reserved for the use and benefit of said station, and that it was necessary and is now necessary for the proper performance of the duties of the officers of the health department, and had been in constant use by said department; that defendant had entered upon the quarantine station property, and were then making excavations thereon in an attempt to build its line of railroad on and across the same; that the defendant was then throwing up embankments across the land, and threatening to build its line on and across the same; that such construction would work irreparable injury to the department of the government, and plaintiff prayed for an injunction against defendant from building its roadbed on said property. On that date the judge of the Fifty-Third judicial district issued a temporary injunction enjoining defendant as prayed for by plaintiff. On the 19th of November, 1910, the state, through her Attorney General, instituted in said district court another suit, No. 27,181, against the same defendant, alleging that it was a company incorporated under the laws of the state of Texas, and alleging that the right of way of the defendant company running from Rockport to a point on Harbor Island passed over lands, tide water and islands, belonging to the state of Texas, and that defendant was not authorized to construct its road over the islands and tide waters of Texas; that the Legislature of the state has never by any special act authorized defendant to construct its road from any of said islands or on or across any of said waters; that the policy of the state has been from its earliest history to discourage and prevent monopoly within its boundary; and that, if defendant is allowed to construct its road as laid out and provided for in its charter, a dangerous monopoly would be built up and established in Texas to the irreparable injury of the state. Plaintiff prayed for an injunction restraining defendant from the construction of its road as defined by its charter. On said November 19, 1910, the judge of said court granted a temporary injunction as prayed for by the plaintiff."

Said causes having been consolidated, defendant answered, setting up that it was a railroad corporation, duly chartered by the laws of this state on the 23d of February, 1909; that said charter authorized the construction of its road over the line specifical-

ly described in plaintiff's petition; that since its incorporation the Congress of the United States has authorized the construction of its road across Corpus Christi channel; that the land used by the state for a quarantine station is inclosed, and that its line of railway does not run through or touch said inclosure; that defendant's track is located upon islands, waters, and lands belonging to the state, and that its line is constructed for the purpose of developing the harbor at Aransas Pass, and making the same available for commerce; that the construction of this road is a public necessity for the development of the commerce of this state, and would in no sense create a monopoly; for which reason it prayed that said writs of injunction heretofore granted be dissolved. Upon this motion a trial was had and judgment entered overruling the motion to dissolve, from which ruling this appeal is taken. The proposed line of railway, the construction of which was enjoined, will extend from Rockport, across Aransas Bay to Harbor Island thence along the eastern shore line of said island in a southerly direction, passing through the tract of land upon which the quarantine station is located, to a point on said island nearly opposite Aransas Pass. The quarantine station proper is within an inclosure of about two acres, and it appears that the projected road does not pass through this inclosure, but through the tract of land upon which it is situated, and a few feet west of said inclosure.

There are two questions presented by this appeal: The first is, Has the state, in the absence of a special legislative grant authorizing appellant to construct its roadway over the tide water lands and islands of this state, the right to prevent it from so doing by injunction; and, second, if the state has no such right, then can appellant construct its railway through lands of the state specially set apart by it for a quarantine station? Appellant insists that a railroad company duly incorporated under the laws of this state has the right to construct its road over lands belonging to the state notwithstanding the same are islands or shallow bays or tide water lands belonging to the state. Appellee, on the other hand, contends that the islands and tide water lands of this state cannot be taken for such purpose, except by special grant of the Legislature, because the state, from earliest times, has reserved the same from sale or other disposition.

The Constitution (article 10, § 1) provides "that any railroad corporation or association, organized under the law for the purpose shall have the right to construct and operate a railroad between any points within this state, and to connect at the state line with the roads of other states." See, also, Rev. St. 1895, art. 4422. Article 4423, Rev. St., provides that "Every such corporation shall have the right of way for its line of road through and over any lands belonging to this state and to use any earth, timber, stone or other material upon such land necessary to the construction and operation of its road through or over said land." Article 4437, Id., provides that "nothing in this chapter shall be so construed as to authorize the erection of any bridge or any other obstruction across or over any stream or water navigable by steamboats or sail vessels at the place where any bridge or other obstruction may be proposed to be placed so as to prevent the navigation of such stream or water." It seems to us that under the authority granted by the Constitution and the statutes above alluded to appellant, notwithstanding the policy of the state has been to reserve its islands and tide water lands from sale or other disposition, would have the right, under its charter, to construct its road over the same. The broad language used indicates that this right was granted to it. The case of Roberts v. Terrell, 101 Tex. 577, 110 S. W. 133, relied upon by appellee in support of its contention, it is true, does hold that these lands are not subject to location in the absence of legislative grant; but, notwithstanding this, we do not believe that it was intended that a right of way across them could not be acquired by railway corporations under the general laws, because there is a great difference between the disposition of the land and the mere granting of a right of way over the same. This distinction is well recognized in the case of Texas Central Railroad Co. v. Bowman, 97 Tex. 417, 79 S. W. 295, and also in the case of Illinois Central R. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018. While it seems to have been the settled policy of the state not to dispose of these lands except by special authority from the Legislature, yet we think the history of the state shows that its policy has likewise been to encourage railroad building. As well said by counsel for appellant in their brief, "prior to 1875 all railroad charters were by special act of the Legislature. An examination of these acts will indicate that the state had a broad policy in the development of its railways, and that this policy included the construction of a line in the northern part of the state from east to west, and the building of other roads from the Gulf to this road. One of the roads provided for was the Galveston, Harrisburg & Henderson. Its special act charter provided for the construction of a road from Houston to Galveston and then on up into the state. The right to cross the bay was not specifically referred to. Subsequently an act was passed providing that this road could not secure the bonus in land mentioned in its charter unless it did construct its line across the bay. Both in the charter and amendment it seems to have been assumed, as a matter of course, that the right to cross the bay existed, and that no specific authority was required.

That this has been the opinion ever since is indicated by the following facts: The International & Great Northern Railroad and the Gulf, Colorado & Santa Fé Railroad crossed the bay at Galveston without specific authority, and without any question ever having been raised as to their right to use this right of way. The San Antonio & Aransas Pass Railroad was constructed from the point at which Portland is now located to Corpus Christi, across Nueces Bay, a distance of perhaps 1½ miles, without any question ever having been raised as to its right. When in 1892 a provision was made for the sale of the very land, right of way upon which is now in question, the rights of the Aransas Pass Terminal Company were guarded. This company had projected its line and partially built it, and all the acts providing for sale of lands at Harbor Island and other points contiguous to Aransas Pass assumed that this railroad company had acquired right of way." In view of our Constitution and the statutes above mentioned, we believe that appellant had the right under its charter to construct the road in question as outlined.

This brings us to the consideration of the second question, and that is whether appellant had the right to construct its roadway across the lands set apart for the quarantine station. The law seems to be that property held by the state or by the United States for sale or settlement may be taken for railroad purposes; but this is not true, where the land has been devoted to a particular use of the government. 2 Elliott on Railroads, § 965, and authorities there cited. See, also, St. Louis R. R. Co. v. Illinois Institute for the Blind, 43 Ill. 303; Oregon R. R. Co. v. Portland, 9 Or. 231; State v. Cincinnati, etc., Railroad, 37 Ohio St. 157; Atlanta v. Central R. Co., 53 Ga. 120.

While conceding this doctrine to be true. appellant seeks to avoid the force thereof by alleging and showing that its road does not run through or interfere with the inclosed land in actual use for the quarantine sta-

tion. By Acts 25th Leg., pp. 73–77, inclusive, it appears that the state authorized the sale of the land on Harbor Island to the Aransas Pass Harbor Company, but specially reserved from said sale, however, 320 acres of land on the east shore of said island, describing the same by metes and bounds, for the purposes of a quarantine station. It appears from the evidence that the line of the projected road runs through this tract, but does not pass through or interfere with the inclosed portion thereof in actual use for said station. We think the Legislature by this reservation intended to set apart the entire 320 acres for the specific use of a quarantine station. Whether the state is actually using at the present time all of said land or not, it seems to us, would make no difference, because it is the province of the Legislature to determine how much land should be set aside for this purpose. Having done so, we think the entire tract, whether in actual use or not, is thereby set apart and reserved for quarantine purposes; and the attempted appropriation of any portion thereof by appellant for railroad purposes is unlawful and unauthorized, for which reason we believe that the motion to dissolve was properly denied.

From what we have said it follows that we think the action of the court in refusing to dissolve the injunction of date November 19, 1910, in cause No. 27,181, was erroneous; but that the action of the court in refusing to dissolve the injunction or restraining order granted by the court on November 14, 1910, in cause No. 26,685, was correct. It is therefore ordered that the judgment of the court below, so far as the same refused to dissolve the injunction in cause No. 27,181, be, and the same is hereby, reversed and rendered in behalf of appellant; but that the judgment of the court in refusing to dissolve the injunction issued November 14, 1910, in cause No. 26,685, be and the same is in all things affirmed.

Affirmed in part, and in part reversed and rendered.