**HUMBLE PIPE LINE CO. et al. v. STATE et al. (No. 7236.)\***

Court of Civil Appeals of Texas. Austin.
Feb. 23, 1928.

Rehearing Denied Feb. 29, 1928.

**1. Corporations ⬤⟾374—Grant of express statutory power to public service corporations necessarily implies grant of powers necessary to execute powers expressly granted.**

Grant of express statutory power to public service corporations carries with it by necessary implication the grant of every other power necessary to the execution of the power expressly granted and necessary to accomplish the purposes for which the corporation was created.

**2. Corporations ⬤⟾370(3)—Public grant for public advantage must be liberally construed to effectuate purposes intended.**

Public grant to public service corporations for advantage of public generally must be liberally construed so as to reasonably effectuate the purposes of the grant.

**3. Statutes ⬤⟾225¾—Judicial construction of earlier statutes prior to enactment of subsequent analogous statute must be read into subsequent statute.**

In enacting statutes, Legislature is presumed to have taken notice of court decisions construing prior analogous statutes, and judicial construction must therefore be read into the subsequent statute.

**4. Navigable waters ⬤⟾36(4)—Pipe line corporation held authorized without special grant to operate pipe lines under tidal waters reaching to deep sea loading points within state's jurisdiction. (Rev. St. 1925, arts. 1495, 1496, 1497, 6018, 6020, 6022).**

Rev. St. 1925, arts. 1495, 1496, 1497, 6018, 6020, and 6022, giving pipe line corporations power to operate pipe lines between different points of state as common carriers, and to transport crude petroleum from places of production to distributing or reshipping points, with right of eminent domain to appropriate lands for pipe lines, held by implication to authorize construction by corporation of pipe line across and under beds and bottom of public bays and channels and Gulf of Mexico and tidal lands adjacent thereto to deep sea loading or distributing or reshipping points within three-mile territorial jurisdiction of state, where pipe line was advantageous for petroleum industry; express legislation on subject not being necessary.

**5. Navigable waters ⬤⟾36(4)—Control by game, fish and oyster commissioner of tidal waters within state's jurisdiction held not to preclude implied authority to operate pipe lines to deep sea loading points (Rev. St. 1925, arts. 1495, 1496, 1497, 4026, 6018, 6020, 6022).**

Rev. St. 1921, art. 4026, granting to game, fish, and oyster commissioner jurisdiction and control over public bays and inlets in the state and Gulf of Mexico within state's jurisdiction, held not to preclude implied authority of pipe line corporation to extend pipe lines under bays and channels and Gulf to deep sea loading points under general powers granted such corporations by articles 1495, 1496, 1497, 6018, 6020, 6022, or to require that special legislative grant be made to permit such use of public waters, where use did not interfere with rights of public for navigation, fishing, bathing, and hunting, and waters were not polluted.

**6. Navigable waters ⬤⟾36(4)—Express legislative grants for use of tidal lands and waters held not to preclude implied grant of right to operate pipe lines thereunder (Rev. St. 1925, arts. 1495, 1496, 1497, 6018, 6020, 6022).**

Existence of statute permitting use of tidal lands and waters for express purposes by certain public service corporations held not to require specific grant to pipe line company of right to extend pipe lines under bays and inlets and Gulf of Mexico to deep sea loading points within state's jurisdiction, or to prevent implied grant of such authority under Rev. St. 1925, arts. 1495, 1496, 1497, 6018, 6020, 6022; and the fact that some classes of public utilities were granted express rights of way does not reasonably or necessarily show intention on part of Legislature to deprive other classes of that right from want of special permit.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the state, on the relation of its Attorney General and others, against the Humble Pipe Line Company and others, for injunctive relief. From a temporary restraining order granted the State, defendants appeal. Judgment reversed, and temporary injunction dissolved.

E. E. Townes, Andrews, Streetman, Logue & Mobley and John C. Townes, Jr., all of Houston, and Ben H. Powell, of Austin, for appellants.

Claude Pollard, Atty. Gen., and C. W. Trueheart, Joe B. Brown, and Paul D. Page, Jr., Asst. Attys. Gen., for appellees.

BLAIR, J. The state of Texas ex rel. its Attorney General sued appellant Humble Pipe Line Company, a common carrier pipe line corporation, in the ordinary form of trespass to try title, and to temporarily enjoin, pending a final hearing of the cause, the continued laying of its pipe lines from a point on the mainland at Corpus Christi Bay, across and upon the bottoms of Red Fish Bay, Corpus Christi Bay, the tide lands adjacent thereto (except Mustang Island), and the Gulf of Mexico opposite Mustang Island, to two deep sea loading points, all within the three-mile territorial jurisdiction of the state. Appellant answered that it was a common carrier under the various pipe line statutes of this state and its charter, with right of eminent domain to appropriate the public lands in suit across and under which to lay its pipe lines in order that it might fully and

completely carry out the purposes for which it was created.

The trial court held the statutes not to authorize appellant to lay its pipe lines across and under the beds and bottoms of public bays and inlets belonging to this state or the part of the Gulf of Mexico within the jurisdiction of this state; that appellant company was therefore a naked trespasser on the tidal lands and waters in suit to the extent of the use and purposes to which it was subjecting them, and granted the temporary restraining order prayed for by the state. This appeal is from that order, and the sole question here involved in whether the trial court has correctly construed these pipe line statutes.

The first of these statutes was passed in 1915, and provided for the incorporation of pipe line companies, with grant of power to operate pipe lines "between different points in this state," and with grant of other powers necessary to the purposes of such corporations. Articles 1495, 1496, R. S. 1925. In 1917, the Legislature declared pipe line companies to be common carriers, and in 1919 conferred the right of eminent domain on them and in the same years other comprehensive regulatory statutes concerning them were enacted. Articles 1497, 6018, 6020, 6022, R. S. 1925. We do not deem it necessary or proper to quote at length from these statutes, but, suffice it to say, a general summary shows them to provide: (a) That a pipe line corporation is a public service corporation charged with a public use, and subject to public regulation; (b) that it is a common carrier authorized to operate pipe lines "between different points in this state," and to transport crude petroleum by pipe lines, "from any oil field or place of production within this state to any distributing, refining or marketing center or reshipping point thereof, within this state"; (c) that it has the right to own and occupy "such lands, right of way, easements, franchises, buildings and structures as may be necessary to the purposes of such corporation"; and (d) with right of eminent domain first, to appropriate "lands and property * * * of any persons or corporation * * * as may be necessary to the purposes of such corporation"; and, second, to appropriate "rights of way or easements" on private lands and properties across and under which to lay its pipe lines, and has the right to lay its pipe lines "across and under any public road or highway, street, railroad, canal, or stream, etc., in this state."

It will be observed, with regard to the right of a pipe line corporation to lay its pipe lines across and under any public lands belonging to the state, that the statutes only expressly declare that right to exist with reference to "any public road or highway, canal, or stream," etc., in this state. Appellant insists, however, that its right to use the tidal lands and waters in suit across and under which to lay its pipe lines does not depend

upon any express statutory authority, but is based upon a reasonably necessary implication of right to use them as being necessary and proper to the execution of the power expressly granted it by the terms of the statutes, and in order that it may fully and completely carry out the purposes for which it was created; and cites the following cases in support of that contention: Texas Central Ry. Co. v. Bowman, 97 Tex. 417, 79 S. W. 295; Ayres v. Railway, 39 Tex. Civ. App. 561, 88 S. W. 436; Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322.

[1-3] We have reached the conclusion that appellant's contention is correct, and that the two rules of statutory construction recognized and established by the cases cited, supra, are applicable and control this case. These rules are, first, that the grant of express statutory power to public service corporations carries with it by "necessary implication the grant of every other power necessary and proper to the execution of the power expressly granted"; and second, "that a public grant for public advantages must be construed liberally," so as to reasonably effectuate the purposes of the grant. It is true that the cases cited do not construe the pipe line statutes, but construe similar and analogous statutes with regard to common carrier railroad corporations and public service irrigation corporations with right of eminent domain, and, in substance, hold that statutes granting to such corporations right of eminent domain to appropriate private lands and properties necessary to the purposes of such corporations by necessary implication grant power and authority to such corporations to appropriate from the public domain, though no express authority is given by statutes to do so, such lands or waters as are "necessary and proper to the execution of the power expressly granted"; and "that a public grant for public advantages must be construed liberally" so as to effectuate the purposes of the grant. These cases were decided long prior to the enactment of the analogous pipe line statutes, and the Legislature is presumed to have taken notice of them as a part of the law of the land when it passed the pipe line statutes. Necessarily, therefore, this judicial construction must be read into the analogous pipe line statutes.

[4] Now, when the principles and established rules of statutory construction above announced are applied to the pipe line statutes in question, and to the express grant of powers given by them to this appellant public service pipe line corporation—charged with a public use and subject to public regulation—to operate pipe lines "between different points in this state," and to transport as a common carrier by pipe lines crude petroleum "from any oil field or place of production within this state to any distributing, refining, or marketing center or reshipping

point thereof, within this state," and with right of eminent domain to appropriate ordinary public and private lands as well as the expressly enumerated public lands and waters for rights of way purposes across and under which such corporation may lay its pipe lines, it becomes clear that the grant of the broad and general powers enumerated carries with it by necessary implication the grant of power and authority to such corporation to lay its pipe lines across and under the beds and bottoms of public bays, inlets, canals, or channels belonging to this state or the part of the Gulf of Mexico within the jurisdiction of this state, and to any deep sea loading or distributing or reshipping point within this state, as being reasonably necessary to carry out the purposes for which the corporation was created with the resultant good intended to the public.

It is agreed by the stipulations on file that the laying of these pipe lines across and under the beds and bottoms of the tidal lands and waters in suit to effect a deep sea loading point will result beneficially to the public using the pipe line; that they will materially and essentially aid such public service corporation to fully and effectually and completely carry out the duties and purposes imposed upon it by the statutes; and that it was the intention of the Legislature that these pipe lines would serve both domestic and foreign trade and commerce in the petroleum industry. Therefore it must necessarily follow that appellant corporation has the right to construct and lay its pipe lines to any port, dock, buoy, or deep sea loading point which the good business enterprise and judgment of those engaged in the pipe line and shipping industries might construct and devise within the territorial limits of this state, and reasonably necessary to the petroleum industry. Certainly there is nothing in the language of the statutes to authorize the narrow construction placed upon them by the Attorney General to the effect that the Legislature intended to limit and confine the laying of such pipe lines only to "ports of Texas," or to "shipping" or "transportation" points, and only to the "tide water," but not "across the tide water to the open sea." But we are clear in the view that the Legislature intended by the broad and general language used to not only authorize the construction of pipe lines to known ports, shipping or transportation points situated on land and to the edge of the tide water, but intended to authorize the laying of such pipe lines to any port, or buoy, or reshipping point or deep sea loading point which might be established and reasonably necessary to foreign trade in oil. Any lesser authority in this respect would necessarily limit and curtail the petroleum industry of this state, which is a highly competitive industry, with that of other states and nations.

[5] But the Attorney General also contends that, because of the peculiar policy of this state to reserve to the general public for navigation, fishing, bathing, and hunting the tidal lands and waters in suit, appellant corporation would only have the right to lay its pipe lines across and under them by special permission from the Legislature to do so, and that "the liberal implication indulged by the courts in the Bowman, Ayres, and Jayne Cases with respect to the right to use by public service corporations of the public lands of other character have no application to public tidal lands and waters." It is insisted that this peculiar public policy is specifically declared in article 4026, R. S. 1925, which reads in part as follows:

"All of the public * * * bays and inlets in this state, and all that part of the Gulf of Mexico within the jurisdiction of this state, together with their beds and bottoms, and all the products thereof, shall continue and remain the property of the state of Texas, except in so far as the state shall permit the use of said waters and bottoms, or permit the taking of the products of such bottoms and waters, and in so far as this use shall relate to or affect the taking and conservation of fish, oysters, * * * and all other kinds and forms of marine life, or relate to sand, * * * and all other kinds of shell, the game, fish and oyster commissioner shall have jurisdiction over and control of, in accordance with and by the authority vested in him by the laws of this state."

We do not understand that this statute is cited or relied upon by the Attorney General as giving the game, fish, and oyster commissioner, who is a party to this suit on relation of Attorney General, any authority in the premises; nor for the purpose of showing that his authority or possession for the purposes expressed in the statutes are being interfered with in any manner by the laying of the pipe lines in question. In fact, it is stipulated between the parties that he "is not in actual physical possession of the property, and has not been actually excluded therefrom by the defendants or any of them." It is also conceded that the use and purposes to which appellant was subjecting the lands and waters in suit does not as a matter of fact interfere with the right of the public generally to use them for navigation, fishing, bathing, and hunting. Nor is there any question of pollution of the waters involved on this appeal. But the statute is cited for two purposes: First, to show, because of the peculiar policy of this state to reserve its tidal lands and waters to specific uses, that the Legislature did not intend to grant appellant by implication the use of them for the purposes it was subjecting them; and, second, that "a distinction between the liberal rule applicable to powers given as affecting public lands held in proprietary capacity and public lands held in trust by the state for public use" should be made so as to exclude the latter character of lands from other uses

except upon a special permit of the Legislature.

If there was ever any merit to these contentions, the case of R. & P. A. R. Co. v. State, 135 S. W. 263, by this court, and the case of Texas Channel & Dock Co. v. State, 104 Tex. 168, 135 S. W. 522, by the Supreme Court, have now necessarily concluded the issues against the state. The first case cited involved the last question here raised, and related to the same tidal lands and waters. In that case the statute construed did not expressly grant to railroads rights of way over the same tidal lands and waters here involved, or at least those lying immediately adjacent to them; and, if the right to such way existed, it had to exist by implication from the general grant of such right under the general statutes. Because the case is so nearly in point with the case at bar, we quote at length from it as follows:

"Has the state, in the absence of a special legislative grant authorizing appellant to construct its roadway over the tide water lands and islands of this state, the right to prevent it from so doing by injunction; and, second, if the state has no such right, then can appellant construct its railway through lands of the state specially set apart by it for a quarantine station? Appellant insists that a railroad company duly incorporated under the laws of this state has the right to construct its road over lands belonging to the state notwithstanding the same are islands or shallow bays or tide water lands belonging to the state. Appellee, on the other hand, contends that the islands and tide water lands of this state cannot be taken for such purpose, except by special grant of the Legislature, because the state, from earliest times, has reserved the same from sale or other disposition.

"The Constitution (article 10, paragraph 1) provides 'that any railroad corporation or association, organized under the law for the purpose shall have the right to construct and operate a railroad between any points within this state, and to connect at the state line with the roads of other states.' See, also, Rev. St. 1895, art. 4422. Article 4423, Rev. St., provides that 'Every such corporation shall have the right of way for its line of road through and over any lands belonging to this state and to use any earth, timber, stone or other material upon such land necessary to the construction and operation of its road through or over said land.' Article 4437, Id., provides that 'nothing in this chapter shall be so construed as to authorize the erection of any bridge or any other obstruction across or over any stream or water navigable by steamboats or sail vessels at the place where any bridge or other obstruction may be proposed to be placed so as to prevent the navigation of such stream or water.' It seems to us that, under the authority granted by the Constitution and the statutes above alluded to, appellant, notwithstanding the policy of the state has been to reserve its islands and tide water lands from sale or other disposition, would have the right, under its charter, to construct its road over the same. The broad language used indicates that this right was granted to it."

The second case cited also considered a similar question, which will be seen from the following quotations:

"The sole proposition submitted by the state is that under the Constitution and laws of this state land situated on islands is 'not subject to appropriation by a railroad company for its use as a right of way or otherwise.' * * * "It will be noted, too, that this right of way is granted 'over any lands belonging to this state,' without exception, qualification, or abridgment of the right. It occurs to us that to adopt the contention of the state that this right should not exist on islands belonging to the state would be by judicial construction to destroy the plain meaning of the statute, go contrary to the wise and salutary provisions of the Constitution and statutes of the state, arrest the enterprise of our people, and stop them at the water's edge and deny them aid to or participation in the commerce and carrying trade of the seas. Such a construction is not, we believe, in fairness to the language of the law, to be adopted. As shown by Judge Rice in his opinion in the case noted above [R. & P. A. R. Co. v. State (Tex. Civ. App.) 135 S. W. 263], it runs contrary to the construction and practice obtaining in this state for more than a generation. We deem it unnecessary to extend the discussion further."

The statute quoted was enacted in 1905, and each of the above cases, as well as the Jayne Case, supra, was decided in 1911, so it is clear that the courts did not construe the statute as providing that the lands and waters in suit could only be appropriated by public service corporations under special permission of the Legislature; and the cases are certainly authority for the proposition that a public service corporation, with right of eminent domain, may appropriate them under an express power given or one existing by necessary implication. And the broad and general language granting appellant authority to operate its pipe lines "between different points in this state," and to "any distributing, refining or marketing center or reshipping point thereof, within this state," sufficiently indicates with reasonable certainty that the Legislature intended to grant appellant by necessary implication the use of any lands belonging to this state, which would necessarily include tidal lands and waters under the court decisions above cited.

Nor is it necessary to enter into a lengthy discussion of the cases cited from other jurisdictions. In general, they reannounce the following rule found in section 276 of Lewis on Eminent Domain:

"The right to take property already devoted to public use must be given in express terms or by necessary implication."

But such is the rule announced by our courts and here applied. It may be true that some of the cases cited make a distinction or apply a more limited or restricted rule of construction in reference to public lands held in trust for common use and benefit than they

apply to public lands held in a proprietary capacity, but such cases are not ·authority here. The decisions in the Jayne and last two cases cited apply the liberal implication rule to the same lands and waters here involved, and therefore the restricted rule announced in other states is not applicable. Nor is it thought that the out of state cases cited and relating to public lands held in trust and devoted to an exclusive use, such as a public park or common, apply here, because the lands here involved have never been devoted to any such exclusive use, as is conclusively evidenced by the many statutes expressly and impliedly granting their use to public service corporations.

Nor do we think the case of Landry v. Robison, 110 Tex. 295, 219 S. W. 819, and the other cases there cited, any authority for the proposition here presented. That case holds "that nothing short of express and positive language can suffice to evidence the intention to grant exclusive private privileges or rights" in navigable waters held for common use and benefit. But that salutary rule has no application here, where we are dealing with a public service corporation charged with a public use, and with reference to which liberal implications are indulged, such as will encourage and effectually accomplish and carry out the purposes of the legislative act creating it.

[6] The state further contends in this regard that, because various statutes permit specific uses for specific purposes of tidal lands and waters by express terms, it is conclusive evidence of the public policy to reserve them to common use, and of the intention of the Legislature not to permit their use except upon special permission. Our attention is called in this respect to the statutes granting to channel and dock corporations, deep sea corporations, and electric railway corporations by express terms rights of way over these lands and waters. But we think the. fact that the Legislature has by specific grant authorized their use for these and other purposes not necessary to enumerate clearly evidences the intention of the Legislature not to reserve them exclusively to common use or solely for the specific purposes stated in the game, fish, and oyster statute, supra. And the contention that the specific grant statutes also evidence the legislative intent to require specific permission to use them, is wholly without merit or reason. Why would the Legislature grant to one public service corporation a special use, and at the same time withhold that use from other public service corporations of a like general nature and character, and authorized for a like general purpose? There are many public utility and public service corporations of as much importance to the various industries of the state as the ones referred to which are not by express terms granted rights of way over these tidal lands and waters, and no

reason exists as to why the state should discriminate against them. For instance, the statutes authorizing the incorporation and operation of railroads did not for many years grant specific right of eminent domain over state owned lands. But the courts granted them that right by implication.

Telegraph companies, gas companies to furnish heat, light, and power to cities and towns, water companies, and sewerage companies, each a public utility or public service corporation with right of eminent domain, are not granted by express terms rights of way over these tidal lands and waters. Yet it is a matter of common knowledge that at least some of them are exercising that right without let or hindrance. Then, too, there are the court decisions which hold that others were granted rights of way over these lands and waters only by implication. So it follows as the only reasonable conclusion that the fact that some classes of public utility or public service corporations were granted express rights of way, and others were not expressly granted the right, does not reasonably or necessarily evidence any intention on the part of the Legislature to deprive the latter classes of that right for want of a special permit; nor does it in any sense affect or modify the "recognized and established" rule of construction laid down in the court decisions, supra, that such right may be acquired by implication. The statutes above referred to were passed long before the Jayne Case or the last two cases cited were decided, and the fact that some were granted. express rights of way and others were not does not appear to have been of any significance or importance to those decisions. At least that fact was not alluded to or discussed in either of those decisions, each of which well and thoroughly covers the whole scope of the subject-matter involved.

These statutes and court decisions were in effect long before the pipe line statutes were enacted. They clearly express and define the legislative intent with regard to similar public service corporations. They circumscribe, delineate, and define the legislative intent and policy as affects the public tidal lands and waters of this state, and the purposes for which they may be used, one of which is that they may be used by public service corporations of the nature and character of appellant for rights of way purposes when reasonably necessary to carry out and accomplish the purposes for which such corporations are created, and that that grant of right may be given in express terms or by necessary implication. Such defined policy and intent of the Legislature having been fixed long prior to the enactment of the pipe line statutes, it therefore became immaterial whether the grant to appellant to lay its pipe lines across and under such tidal lands and waters was expressly made, or whether the right was only by implication. In fact, and in view of

such a well-defined and described policy on the part of the Legislature, only a special act of the Legislature denying such right to such a public service corporation would suffice to deprive it of such right of way. And, if it should be considered necessary to assign any reason why the Legislature expressly granted the right in one instance, and did not do so in another, the answer may be found upon an examination of the statutes themselves which grant the express right. That is, from such an examination it becomes at once apparent that the legislature did not intend by the express grant to give what it had already given by an implied grant, but that it might properly define and limit the right conferred so as to not create a monopoly, or permit such a use of the right conferred as might or would necessarily interfere with other known and recognized uses of the lands and waters involved.

We therefore reverse the judgment of the trial court, and dissolve the temporary injunction granted.

Reversed, and temporary injunction dissolved.