326

## UPSHUR COUNTY v. HEYDRICK et al.
### No. 2717.

Court of Civil Appeals of Texas. Eastland.
May 20, 1949.

Rehearing Denied June 10, 1949.

John H. Banks, Haskell, Looney Lindsey, Gilmer, W. C. Hancock, Pittsburg, Edwin M. Fulton, Gilmer, for appellant.

McDonald & Anderson, Wichita Falls, Tom Davis, Haskell, Ratliff & Ratliff, Has-

kell, Robert E. Bowers, Breckenridge, Wheat & Newton, Seymour, Dickson &. Balch, Seymour, R. E. Seagler, Houston, Jno. E. Kilgore, Dallas, Bullington, Humphrey & Humphrey, Wichita Falls, Vinson, Elkins, Weems & Francis, Houston, D. D. Williams, Throckmorton, H. M. Muse, Wichita Falls, for appellees.

COLLINGS, Justice.

Appellant Upshur County, filed this suit in the District Court on October 21, 1946 against L. C. Heydrick and others, for the title and possession of the oil, gas and other minerals in, on and under four leagues, more or less, of school lands granted to it by the State of Texas for school purposes and asked for the cancellation of a mineral conveyance which had been executed by the Commissioners' Court of said County on January 1, 1925. The judgment of the trial court was for appellants against certain defendants who either filed disclaimers or failed to file answers, but provided that appellants take nothing as to appellees. From the adverse portion of such judgment appellant brings this appeal.

The case was tried before the court without a jury and the facts are substantially as follows: Upshur County, acting through its Commissioners' Court, on January 1, 1925, by written instrument, conveyed to E. A. Stevens and A. S. Everest, predecessors in title of appellees, all the oil, gas and other minerals in and under the school lands that were being held by Upshur County in trust for the school fund of said County, being four leagues of land, more or less, located in Throckmorton and Baylor Counties.

The mineral conveyance in question provided that the title and rights conveyed were defeasible upon the following conditions:

"If the said grantees, their heirs and assigns, shall fail to discover oil or gas in paying quantities on said premises within five years from the date hereof, then this conveyance shall become null and void and of no further force and effect.

"If the said grantees, their heirs or assigns, shall fail to begin the drilling of a well for oil or gas upon said premises by the first day of April, 1925, then this conveyance shall become null and void."

The conveyance provided, in addition, the following obligations on the part of grantees therein:

"The Grantees agree and obligate themselves, their heirs and assigns, that they will begin the actual drilling of a well for oil or gas upon some portion of the above described premises by April 1, 1925, and to begin the drilling of a second well upon said premises within ninety days thereafter; and likewise to begin the actual drilling of a third well upon said premises within six months after the beginning of the first well, and shall begin the drilling of the fourth well upon said premises within nine months from the beginning of the drilling of the first well.

"The grantees obligate themselves to drill said wells with due diligence to the depth of sixteen hundred and fifty (1650) feet or to oil or gas in paying quantities at a lesser depth."

The consideration recited in the instrument in addition to the above, was $10 cash in hand paid and payment of a sum of money equal to one-eighth of the gross proceeds of all the oil and gas produced and saved from said premises, to be paid within fifteen days after the expiration of the month when produced.

The court found that the grantees, their heirs and/or assigns began the actual drilling of a well for oil or gas upon some portion of the above described premises by April 1, 1925, and began the drilling of a second well upon said premises within the time provided by an extension agreement executed by all parties to the original mineral conveyance; and likewise, began the actual drilling of a third well upon said premises within six months after the beginning of the first well and also began the drilling of a fourth well upon said premises within nine months from the beginning of the drilling of the first well.

The court further found that the grantees, their heirs and/or assigns drilled said wells with due diligence and to a depth of 1,650 feet or to oil or gas in paying quantities at a lesser depth.

The court found that appellant as plaintiff, failed to establish by a preponderance of the evidence that oil in paying quantities was not discovered within the five year period provided in the mineral conveyance, but that the appellees did establish, by a preponderance of the evidence, that oil was discovered in paying quantities from said premises within five years from the date of said instrument.

The court further found that under the terms of the instrument above mentioned, the grantees, their heirs and/or assigns, paid to Upshur County for the use of the school fund of said county, the sum of money equal to one-eighth of the gross proceeds of all the oil produced and saved from said premises, and that said sums of money were paid within fifteen days after the expiration of any month such substance was produced from any wells drilled on said premises.

The court further found that the said A. S. Everest and E. A. Stevens and/or their assigns complied with all of the terms of the mineral conveyance in question within the time and in the manner provided in said conveyance.

Appellant contends in Point No. 1 that the mineral conveyance in question is invalid and void and that the trial court erred in not so holding. The basis of this contention is the stated proposition that the consideration for the sale of public lands must be cash and that the consideration for this instrument is not cash or the equivalent. It is further contended that such consideration is speculative in that it depends entirely upon the amount of oil or gas recovered except for a nominal consideration of $10. Appellant insists that the Commissioners' Court had no power to so speculate with the minerals under its county school land. It may be noted that in addition to the $10 cash consideration recited in the instrument, there was a provision for the drilling of four oil wells. These wells were actually drilled. Appellee Heydrick testified that the cost of these wells was about $50,000. This consideration was in addition to the promise of payment of one-eighth of the value of any oil or gas produced, if found in paying quantities. Ordinarily a money

consideration alone will support an oil and gas lease, even though it be for a nominal sum, where there is an additional provision to pay a proportional part of the oil and gas recovered. Bailey v. Shell Petroleum Corp., Tex.Civ.App., 95 S.W.2d 982; Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160. We cannot agree with appellant's proposition that the entire contract was invalid and void because the one-eighth royalty provision covered oil and gas only and did not include other minerals. It is our opinion that the instrument in question was supported by a substantial consideration and that the trial court did not err in holding that it was a valid conveyance. Ehlinger v. Clark, 117 Tex. 547, 8 S.W.2d 666; Texas Cent. Ry. Co. v. Bowman, 97 Tex. 417, 79 S.W. 295; Imperial Irr. Co. v. Jayne, 104 Tex. 395, 138 S.W. 575, Ann. Cas.1914B, 322; Avis v. First Nat. Bank of Wichita Falls, 141 Tex. 489, 174 S.W.2d 255; Short et al. v. W. T. Carter & Brother, et al., 133 Tex. 202, 126 S.W.2d 953. On the question of the authority of the Commissioners' Court to lease, sell or contract with reference to the development of the mineral interest in school land, we quote the following from the case of Ehlinger v. Clark, supra [117 Tex. 547, 8 S.W.2d 671]:

"There is nothing in the constitutional provision here involved which in the remotest degree limits the right of the commissioners' court to make a sale of its mineral estate upon terms similar to those made by citizens generally. The language of the Constitution is:

" 'Each county may sell or dispose of its lands, in whole or in part, in manner to be provided by the commissioners' court of the county.'

"If the makers of the Constitution had intended that the county might sell and dispose of its lands, in whole or in part, for cash only, that purpose and intention could have been expressed with ease in the Constitution, and would have meant a very different thing to the language which was actually used.

* * * * * *

"We are constrained to believe that the commissioners' court realized that there was no authority in law for the county to

enter upon the costly experiment of exploring for oil on its school lands; that there were no funds available for such purpose; and that, therefore, the best course for them to take to develop their oil lands, * * * was to make a contract similar in form, substance, and effect to thousands of contracts made by private individuals throughout the state and throughout the country. To say that they did not have the power to do this would amount to a denial to them of the paramount jurisdiction over the subject of the sale of these lands declared in the Constitution, and would amount to a denial of the right of Fayette county, for all practical purposes, to have its oil lands developed.

\* \* \* \* \* \*

"The contract was not in breach of the trust conferred upon the court, but one plainly carrying out and effectuating that trust. When the court made this contract, in so far as the evidence before us is concerned, they did no more nor less than a prudent man, having due regard for his own property and fortune, could have done. It was plainly an act to conserve and make productive the natural resources owned by the school fund and subject to disposition by the court in such manner as it might provide."

■ Appellant's Point No. 2 complains of the action of the trial court in refusing to hold an extension agreement ineffective and void. The substance of the agreement was that appellant in consideration of $750 paid in cash, agreed that the drilling of the second well provided for in the above mineral conveyance, might be postponed from July 1, 1925 until August 15, 1925. The power to make a contract carries with it the right to modify or change the contract so made. Of course there must be a consideration for the agreement to change. There is no reason why the time element of a contract cannot be extended by a subsequent agreement by the parties where, as in this case, it is supported by a sufficient consideration. The extension agreement was valid and effective because it was paid for and the court did not err in so holding. 10 Tex.Jur., page 425 and 356; Masterson

v. Amarillo Oil Co., Tex.Civ.App., 253 S. W. 908; Groce v. P. B. Yates Mach. Co., Tex.Com.App., 288 S.W. 161.

■ In Point No. 4 appellant contends the trial court erred in finding that appellees discovered oil in paying quantities on the land involved within five years from the date of the mineral conveyance executed by the Commissioners' Court. By the terms of the instrument in question, the title and rights therein conveyed became defeasible if the grantees or their assigns should fail to discover oil or gas in paying quantities within five years from January 1, 1925 or if they should fail to begin the drilling of a well by April 1, 1925, as specified. By this instrument, title to the oil, gas and minerals passed to and was vested in grantees therein at the time of its execution and delivery. Upon the conditions stated, the title was defeasible. To defeat grantees' title it was necessary to show the existence of the conditions relied upon to accomplish that purpose. The burden was upon appellants as grantors to establish the existence of such conditions. That is, to establish that appellees did fail to begin drilling of an oil well as provided in the instrument, or that they failed to discover oil in paying quantities within the five year period. Guleke v. Humble Oil & Refining Co., Tex. Civ.App., 126 S.W.2d 38; Miller v. St. Joseph's 55 Oil Ass'n, Tex.Civ.App., 278 S.W. 457; Hall v. McClesky, Tex.Civ.App., 228 S.W. 1004.

■ No contention is made that any oil well required to be drilled by the terms of the instrument was not timely drilled other than the contention that the extension agreement for the drilling of the second well was invalid. This contention has already been disposed of. It may be noted that the instrument required the discovery of oil in paying quantities, and not production in such quantities within the five year period. It has been held that these terms are not synonymous. Texas Pacific Coal & Oil Co. v. Bratton, Tex.Civ.App., 239 S.W. 688; Bouldin et ux. v. Gulf Production Co., Tex.Civ.App., 5 S.W.2d 1019; Texas Pacific Coal & Oil Company v. Bruce, Tex.Civ.App., 233 S.W. 535.

As stated in Vol. 31A, Tex.Jur., page 278: "It is not uncommon for a lease having a definite fixed term to provide that in case oil or gas is discovered within such term, it shall continue in force and effect * * * Under such a lease, discovery of oil or gas is the only predicate required for its extension and if either of these minerals is encountered before the end of the fixed period, the courts will not cancel it because there was no production in paying quantities at the expiration thereof."

■ Proof was made that during the five year period, four producing oil wells were completed on the premises. One was completed in December of 1925 with an initial production of ten barrels per day. Another ten barrel initial well was completed on June 20, 1929. Then on August 10, 1929, a well was completed with an initial production of thirty barrels and on November 20, 1929, a fifty barrel well was completed. Undoubtedly this proof is sufficient to sustain a finding that oil was discovered on the premises within the five year term. There remains the question as to whether this discovery was in paying quantities as contemplated by the mineral conveyance here under consideration. Most persuasive on this proposition is the report of the Shappell Oil Company for the year 1930, the full year following the termination of the five year term. This report shows an income for that year from the sale of 7/8ths of the oil produced of $4,289.44. The operating expenses for that year were shown to be $2,182.12 which would indicate a profit of $2,107.32. This production covering a period which began soon after the fifty barrel well was completed, and immediately followed the termination of the five year term, is indicative of the kind of "discovery" made by grantees. This evidence is not consistent with the idea that appellees failed to discover oil as required in the lease but in our opinion, supports the finding of the trial court that oil was discovered and that it was discovered in paying quantities.

The holding on the points discussed render the other points set out in appellant's brief immaterial. For the reasons stated, the judgment of the trial court is affirmed.