**The STATE of Texas and the Texas A & M University System, Appellants**

v.

**MONTGOMERY COUNTY, Texas, Appellee.**

No. 09–07–560 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 17, 2008.

Decided July 31, 2008.

Greg Abbott, Atty. Gen. of Texas, Kent C. Sullivan, First Asst. Atty. Gen., David S. Morales, Deputy Atty. Gen. for Civil Litigation, R. Ted Cruz, Sol. Gen., Rance L. Craft, Asst. Sol. Gen., Richard D. Naylor, Asst. Atty. Gen., Austin, for appellants.

J. Mark Breeding, Paul S. Radich, Andrews Kurth LLP, Houston, David K. Walker, Co. Atty., Conroe, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

The State of Texas and The Texas A & M University System appeal the denial of their plea to the jurisdiction in this eminent domain proceeding initiated by Montgomery County, Texas.[1] A contract between Montgomery County and the Texas Department of Transportation requires Montgomery County to obtain and transfer to the State the fee simple title to a strip of land for a highway expansion project. The land in question runs through property managed by the Texas Forest System, which is a service of TAMUS.[2] In four issues, the appellants contend: (1) the State and its agencies cannot be sued in a condemnation action absent a waiver of sovereign immunity; (2) the Texas Education Code withholds legislative consent to sue the State to condemn State Forest land; (3) the Transportation Code precludes a judgment against a state agency to condemn state property when the property will be used for highway purposes and placed in the State's name; and (4) filing objections to the special commissioners'

---

1. In this opinion, we refer to the appellants collectively and refer to the Texas A & M University System individually as "TAMUS." Although the Texas Department of Transportation ("TxDOT") was a party to the pass-through toll agreement, the State's participation in this litigation arises from holding record title to the real property rather than through its state highway projects or as a political subdivision of state government.

2. *See* Tex. Educ.Code Ann. § 88.001 (Vernon 2002).

award with a plea to the jurisdiction and alternative request for compensation damages does not waive the State's immunity. We affirm the trial court's order denying the plea to the jurisdiction.

## ISSUE ONE

■ Montgomery County and the Texas Department of Transportation entered into a pass-through toll agreement to construct improvements to FM 1488. Such agreements are authorized by statute. *See* TEX. TRANSP. CODE ANN. § 222.104 (Vernon Supp.2007). To fulfill its obligations under the agreement, Montgomery County seeks to condemn fee simple title to land located within a Texas State Forest owned by the State, to construct upon that land improvements for the State's highway system, and to place title to the improved land back in the State.[3] The appellants contend their fellow unit of state government cannot exercise its right of eminent domain because the Legislature has not specifically authorized eminent domain proceedings against the State and TAMUS. As authority, they rely upon *Burlington N. & Santa Fe Ry. Co. v. City of Houston,* 171 S.W.3d 240, 245–46 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

As part of a federally-approved rail line project, the *Burlington* railroad brought a condemnation action against a municipality. *Id.* at 242. The trial court found that the city's sovereign immunity had been waived but the railroad did not have the

right to take the property under state law. *Id.* at 245. On appeal, the railroad argued the city's sovereign immunity was waived by combined effect of the statute that grants a railroad the right to condemn "any real estate," the statute that states a home-rule municipality "may plead and be impleaded in any court," and the city's charter, which stated the city may "sue and be sued." *Id.* at 245–46. The appellate court decided immunity was waived by the "plead and be impleaded" statutory language and did not reach whether the statute granting a right to condemn "any real estate" waived the city's sovereign immunity.[4] *Id.* The appellate court went on to hold that federal law preempted state law on paramount public use. *Id.* at 248–49. Thus, the *Burlington* court did not decide whether the grant of eminent domain power over public property created an express waiver of the sovereign immunity of the governmental entity from which the property is acquired.

■ In determining whether particular statutory language affirmatively and unambiguously waives sovereign immunity, the import of the statutory language must be ascertained in the context in which it occurs. *See Tooke v. City of Mexia,* 197 S.W.3d 325, 329 (Tex.2006); TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2007). The right of eminent domain granted to a county by the legislature "extends to public or private land, but not to land used for

---

**3.** At this juncture, the careful reader will think we have misconstrued something. We have not. Montgomery County is seeking to condemn property owned by the State, take fee simple ownership of that property, only to return the property to the State once the construction project is completed. The appellants refer to this as an "Alice–in–Wonderland scenario" and the appellee calls A & M "the White Rabbit." References from the masterworks of Lewis Carroll, along with those of L. Frank Baum and Mark Twain, are often em-

ployed in appellate briefs, seldom for any useful purpose and usually in a place where citation to precedent would be expected and preferred. For once, however, the literary analogy seems appropriate.

**4.** After *Burlington* was decided, the Supreme Court held that "sue and be sued" and "plead and be impleaded" clauses in statutes do not create an express waiver of immunity. *Tooke v. City of Mexia,* 197 S.W.3d 325 (Tex.2006).

cemetery purposes." TEX. LOC. GOV'T CODE ANN. § 261.001(b) (Vernon 2005). By extending the county's condemnation authority to public lands not used for cemetery purposes, the legislature clearly and unambiguously permits the counties to proceed against other governmental entities using that public land.

### ISSUE TWO

■ The appellants argue the Legislature has withheld consent to Montgomery County's condemnation suit. First, they challenge Montgomery County's reliance on Chapters 251 and 284 of the Transportation Code. "A county may exercise the power of eminent domain in a municipality with the prior consent of the governing body of the municipality to condemn and acquire real property, a right-of-way, or an easement in public or private real property that the commissioners court determines is necessary or convenient to any road that forms or will form a connecting link in the county road system or in a state highway." TEX. TRANSP. CODE ANN. § 251.101(a) (Vernon 1999). Because Montgomery County is not acquiring public land from a municipality, we agree that Section 251.101 does not apply in this case. *Id.*

The appellants contend Chapter 284 of the Transportation Code withholds eminent domain authority from the county. Section 284.061(b) does not mention public property. TEX. TRANSP. CODE ANN. § 284.061(b) (Vernon Supp.2007) ("A county may acquire by eminent domain property to use in or useful for a project under this chapter."). Section 284.061(d) refers to property owned by the state but does not mention eminent domain. TEX. TRANSP. CODE ANN. § 284.061(d) (Vernon Supp. 2007) ("A county has full easements and rights-of-way through, across, under, and over any property owned by this state that are necessary or convenient to construct,

acquire, or efficiently operate a project under this chapter."). The appellants contend this statute does not authorize the exercise of eminent domain to acquire public land but grants easements and rights-of-way instead. As a more specific statute, they argue, Transportation Code § 284.061(d) controls over Local Government Code § 261.001. *See* TEX. LOC. GOV'T CODE ANN. § 261.001 ("A county may exercise the right of eminent domain to condemn and acquire land, an easement in land, or a right-of-way if the acquisition is necessary for the construction of a jail, courthouse, hospital, or library, or for another public purpose authorized by law.... The right of eminent domain conferred by this section extends to public or private land, but not to land used for cemetery purposes."). According to the appellants, by enacting Transportation Code § 284.061, "[t]he Legislature has already exercised its plenary authority over state-owned property to grant the County an easement over the Jones State Forest parcel for the FM 1488 highway-improvement project." By granting an easement, they argue, the Legislature has withheld permission for a condemnation suit.

■ In addressing this argument, we must determine whether the statutes at issue actually conflict. "If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 2005). Here, the statute contained in the Local Government Code grants a broad general power to condemn property already in public use. TEX. LOC. GOV'T CODE ANN. § 261.001. The statute in the Transportation Code addresses the acquisition of property for highway projects. TEX. TRANSP. CODE ANN. § 284.061. By the appellants' own admission, Section 284.061(d) grants a blanket permission to use state

property for highway projects. The plain purpose of subsection (d) of Section 284.061 is to make it easier for counties to obtain state land, not make it more difficult. That subsection grants a county "full easements and rights-of-way" over any property, without limitation, not only if it is necessary but also if it is convenient to place the project on state land. *See id.* The Transportation Code does not limit the rights already granted by the Local Government Code; rather, it provides additional flexibility for the county's project. Thus, Transportation Code § 284.061 does not withhold the Legislature's consent for Montgomery County to exercise eminent domain authority to acquire the property for the pass-through toll project.

■ Next, the appellants argue that the Legislature has withheld consent to the alienation of state forest land without its specific approval. The Education Code addresses the acquisition of land for forestry purposes. TEX. EDUC.CODE ANN. § 88.108 (Vernon 2002). The Education Code also permits TAMUS to divest itself of state forest land. TEX. EDUC.CODE ANN. § 88.108(e) ("The board may sell, exchange, or lease state forest land under its jurisdiction when in its judgment it is advantageous to the state to do so in the highest orderly development and management of state forests. However, no sale or exchange of any such land belonging to the state or the university shall be made until the sale or exchange is authorized by the legislature."). *Id.* The appellants argue Montgomery County's condemnation proceeding is a "sale" for purposes of Section 88.108(e) of the Education Code. We must consider the object sought to be attained by the statute in question and the common law and former statutory provisions. TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). Education Code § 88.108(e) describes and limits the power of the TAMUS board.

That sub-section speaks only to transactions in which the TAMUS board divests itself of state forest land. *See* TEX. EDUC. CODE ANN. § 88.108(e). It protects state forests from sale or exchange without legislative authorization. However, as appellant concedes, with respect to the FM 1488 highway-improvement project, the Legislature has exercised its authority over state-owned property to grant Montgomery County "full easements and rights-of-way through, across, under, and over" the state forest parcel. *See* TEX. TRANSP. CODE ANN. § 284.061(d) (Vernon Supp.2007). The term "right-of-way" in § 284.061(d) means more than simply a right of passage over the land. Here it refers to the land itself. The statute authorizes full use of the state land as a highway. *See* BLACK'S LAW DICTIONARY, at 1351 (8th ed.2004). The change in use of the land in this case from a forest to a highway is not barred by Education Code § 88.108(e), because the Legislature has authorized full use of the land for this highway project. The narrow issue presented here is whether Montgomery County, in addition to full use of the land for a highway, and pursuant to the permission granted to it by the Legislature under Chapter 284, may exercise its eminent domain power to take fee simple title to the land in its name as required by the state's contract.

■ The exercise of eminent domain authority between units of state government is governed by the doctrine of paramount public importance.

> [T]he law does not authorize the condemnation of property which has already been dedicated to a public use, when such condemnation would practically destroy the use to which it has been devoted. No express authority is given by our statutes to condemn such property, and the authority cannot be implied from the general power con-

ferred by the law unless the necessity be so great as to make the new enterprise of paramount importance to the public, and it cannot be practically accomplished in any other way.

*See Sabine & E.T. Ry. Co. v. Gulf & I. Ry. Co. of Tex.,* 92 Tex. 162, 46 S.W. 784, 786 (1898).

The question of whether the doctrine of paramount public importance prevents one governmental entity from condemning public property already dedicated to public use by another governmental entity does not implicate the power of one unit to bring the other to court; rather, the issue is resolved by the commissioners in the condemnation suit. *See id.*

▇▇▇ The appellants argue Section 85.26(a) of the Education Code also supports their position that the trial court lacks jurisdiction over the county's condemnation suit. *See* TEX. EDUC.CODE ANN. § 85.26 (Vernon 2002). Again, we consider the purpose of the statutes involved and give effect to both where possible. *See* TEX. GOV'T CODE ANN. §§ 311.021, 311.023. Section 85.26(a) provides that the TAMUS board may grant easements for rights-of-way to any county in the state on any lands belonging to the state and under the control of the TAMUS board. TEX. EDUC. CODE ANN. § 85.26. This statute provides a means for obtaining an easement and requires that a party obtain an easement before an agency may construct improvements on land under the control of the board. *See* TEX. EDUC.CODE ANN. § 85.26(e). Condemnation is a separate procedure. *See* TEX. PROP.CODE ANN. §§ 21.001–21.065 (Vernon 2000, 2004, & Supp.2007). The fact that the Legislature provided an additional method for obtaining an easement does not mean that the Legislature intended to restrict the eminent domain power granted elsewhere.

## ISSUE THREE

▇▇▇ Next, the appellants contend that the General Land Office has exclusive jurisdiction. They rely upon Section 203.058 of the Transportation Code. *See* TEX. TRANSP. CODE ANN. § 203.058(e) (Vernon 1999) ("If the department and the state agency are unable to agree on adequate compensation, the General Land Office shall determine the fair, equitable, and realistic compensation to be paid."). On its face, this statute applies to property acquired from a public agency by TxDOT. *Id.* The appellants argue that Section 203.058 applies because TxDOT will be the ultimate consumer of the improved highway. The compensation paid by TxDOT will be determined by the pass-through toll agreement between Montgomery County and TxDOT pursuant to Section 222.104. *See* TEX. TRANSP. CODE ANN. § 222.104 (Vernon Supp.2007). Section 203.058 does not give the General Land Office jurisdiction over condemnation compensation disputes between TAMUS and Montgomery County under the facts of this case.

## ISSUE FOUR

▇▇▇ Finally, the appellants contend that their objections to the special commissioners' award did not affirmatively waive sovereign immunity. Sovereign immunity will not bar claims in a case where a governmental entity has joined into the litigation process by asserting its own claims for affirmative relief. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 376–77 (Tex.2006). "The Texas eminent-domain scheme is a two-part process that begins with an administrative proceeding followed, if necessary, by a judicial one." *City of Tyler v. Beck,* 196 S.W.3d 784, 786 (Tex.2006). Judicial condemnation proceedings commence with the filing of an objection to the award. *Id.* The appellants argue they did not invoke the

judicial process when they filed their objection to the award because their primary complaint concerned their plea to the jurisdiction. Although the appellants did request more compensation than the amount awarded by the commissioners, that request was contingent upon the denial of their pleas to the jurisdiction. *See Ray Ferguson Interests, Inc. v. Harris County Sports & Convention Corp.,* 169 S.W.3d 18, 26 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("Alternatively, the governmental entity could first file its jurisdictional plea, then file its 'compulsory' counterclaim for affirmative relief expressly subject to its jurisdictional plea and contingent upon the plea's denial."). In this case, however, the trial court did not err when it denied the plea to the jurisdiction on the merits of the plea. Accordingly, Montgomery County need not rely on the appellants' objections to the award in order to establish jurisdiction in the trial court.

We affirm the trial court's order denying the plea to the jurisdiction.

AFFIRMED.