**DALLAS AREA RAPID TRANSIT and Fort Worth Transportation Authority, Appellants,**

v.

**ONCOR ELECTRIC DELIVERY COMPANY LLC, Appellee.**

No. 05–09–01500–CV.

Court of Appeals of Texas, Dallas.

Dec. 22, 2010.

Patricia M. Reed, Assistant General Counsel/DART, Dallas, TX, for Appellants.

R. Scott Moran, Joann N. Wilkins, Burford & Ryburn, LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, LANG, and MURPHY.

## OPINION ON MOTION FOR REHEARING

Opinion By Justice LANG.

On July 29, 2010, this Court issued an opinion reversing the trial court's judg-

ment in this case and rendering judgment dismissing this case with prejudice. Appellee Oncor Electric Delivery Company LLC ("Oncor") filed a motion for rehearing on August 12, 2010. We deny Oncor's motion for rehearing. We withdraw our July 29, 2010 opinion and vacate the judgment of that date. This is now the opinion of the Court.

This case involves an eminent domain proceeding filed by Oncor against appellants, Dallas Area Rapid Transit ("DART") and Fort Worth Transportation Authority ("The T"), to take an easement for an electrical transmission line. Appellants filed a plea to the jurisdiction based on governmental immunity, which, after a hearing, the trial court denied. We reverse the trial court's order denying the plea and render judgment dismissing the action.

## I. BACKGROUND

DART and The T do business as the Trinity Railway Express, a public transportation commuter rail service running between Dallas and Fort Worth. Oncor is an electric corporation that owns and operates the largest electric distribution and transmission system in Texas. After Oncor filed an application with the Public Utility Commission ("PUC"), the PUC approved construction of a transmission line that would cross over a rail line owned by DART and The T. Notice of the PUC proceeding was sent to the Trinity Railway Express, but neither DART nor The T appeared. Oncor approached DART and The T to negotiate an aerial easement across the rail line, but they were unable to reach an agreement. Then, Oncor filed an eminent domain proceeding against DART and The T to acquire the necessary easement. DART and The T responded by filing a special appearance that included a plea to the jurisdiction asserting their respective governmental immunities. The parties agree, and the trial court took judicial notice, that DART and The T are "governmental entities." After submission to the trial court, the plea to the jurisdiction was denied. In one issue on appeal, DART and The T claim the trial court erred by denying their plea to the jurisdiction, and they request the trial court's order be reversed and the suit be dismissed with prejudice.

## II. APPLICABLE LAW
### A. Plea to the Jurisdiction

A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). We review de novo a challenge to a trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004). To prevail on a plea to the jurisdiction, a party must show that even if all the allegations in the plaintiff's pleadings are taken as true, an incurable defect apparent on the face of the pleadings makes it impossible for the pleadings to confer jurisdiction on the trial court. *Rylander v. Caldwell,* 23 S.W.3d 132, 135 (Tex.App.-Austin 2000, no pet.). Dismissal pursuant to a plea to the jurisdiction based on immunity is with prejudice. *See Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 846 (Tex.2007); *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 636 (Tex.2004).

### B. Governmental Immunity and Its Waiver

A unit of state government is immune from suit and liability absent a waiver of immunity or legislative consent to sue. *Univ. of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex.2008) (citing *Jones,* 8 S.W.3d at 638); *MBP Corp. v. Bd. of Trustees of Galveston Wharves,* 297

S.W.3d 483, 487 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Immunity from liability protects the state from judgment even if the legislature has expressly consented to the suit. *Jones,* 8 S.W.3d at 638. In contrast, immunity from suit bars an action against the state unless the state expressly waives immunity or consents to the suit. *Id.* The party bringing suit must establish the state's consent or waiver. *Id.* Absent such consent or waiver, a trial court lacks subject matter jurisdiction. *Id.* Any consent or waiver of immunity must be clear and unambiguous. *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.,* 282 S.W.3d 59, 68 (Tex.2009); *Tooke v. City of Mexia,* 197 S.W.3d 325, 328–29 (Tex.2006); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 (Tex.2003); *see* TEX. GOV'T CODE ANN. § 311.034 (West Supp.2010) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). The Texas Supreme Court has set out the following aids to help guide an analysis in determining whether the legislature has clearly and unambiguously waived immunity:

> First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of perfect clarity.... For example, we have found waiver when the provision in question would be meaningless unless immunity were waived....
>
> Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity....
>
> Third, if the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach,

the Legislature has intentionally waived the State's sovereign immunity....

> Finally, we are cognizant that, when waiving immunity by explicit language, the legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors.... Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability.

*Taylor,* 106 S.W.3d at 697–98 (citations omitted).

The supreme court has consistently deferred to the legislature to waive immunity from suit because the legislature is better suited to address the conflicting policy issues involved. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 854 (Tex.2002); *see Taylor,* 106 S.W.3d at 695. A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes. *IT–Davy,* 74 S.W.3d at 854. The supreme court has stated "it is the Legislature's sole province to waive or abrogate sovereign immunity." *Id.* at 857. In determining whether particular statutory language affirmatively and unambiguously waives immunity, the import of the statutory language must be ascertained in the context in which it occurs. *Tooke,* 197 S.W.3d at 328–29 ("sue and be sued" and "plead and be impleaded" mean different things in different statutes and thus do not reflect a clear legislative intent to waive immunity); *see State v. Montgomery Cnty.,* 262 S.W.3d 439, 442–43 (Tex. App.-Beaumont 2008, no pet.) (the legislature "clearly and unambiguously" waived immunity in section 261.001 of the local

government code, which states, "[t]he right of eminent domain conferred by this section extends to public or private land, but not to land used for cemetery purposes").

### C. Right of Eminent Domain

Section 181.004 of the Texas Utilities Code provides that an electric corporation has the right and power to "enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation." TEX. UTIL.CODE ANN. § 181.004 (West 2007). The Code Construction Act of the Texas Government Code defines "person" to include a "governmental subdivision or agency." TEX. GOV'T CODE ANN. § 311.005(2) (West 2005). Section 311.034 states that, "[i]n a statute, the use of 'person,' as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction." *Id.* § 311.034.

### III. ANALYSIS

DART and The T argue that, as "governmental entities," they enjoy governmental immunity from Oncor's suit absent legislative consent. In response, Oncor contends that (1) governmental immunity does not apply to eminent domain proceedings; (2) the legislature waived DART and The T's governmental immunity by granting Oncor the power of eminent domain to acquire public property; (3) governmental immunity is preempted by the PUC's stat-

utory powers to regulate Oncor; and (4) DART and The T waived governmental immunity by not challenging the routing of Oncor's electrical transmission line.

### A. Applicability of Governmental Immunity to Condemnation Proceedings

 The record reflects that the parties agree, and the trial court took notice, that DART and The T are "governmental entities." In recent case law, DART has also been described variously as a "governmental unit," a "governmental entity," an "authority," and a "political subdivision." *See, e.g., DART v. Amalgamated Transit Union Local No. 1338,* 273 S.W.3d 659, 661 (Tex.2008); *DART v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003); *DART v. Thomas,* 168 S.W.3d 322, 325–27 (Tex.App.-Dallas 2005, pet. denied); *Stephens v. DART,* 50 S.W.3d 621, 632 (Tex. App.-Dallas 2001, pet. denied). The T has also been described as a "political subdivision." *Bell v. VPSI, Inc.,* 205 S.W.3d 706, 710 (Tex.App.-Fort Worth 2006, no pet.). Such entities enjoy governmental immunity. *Taylor,* 106 S.W.3d at 694 n. 3. Additionally, Oncor does not contest assertions by DART and The T that they are regional transportation authorities created under chapter 452 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 452.001–.720 (West 2007 & Supp.2010). Accordingly, they are immune from suit under Texas law. *Amalgamated Transit Union,* 273 S.W.3d at 661; *see Bell,* 205 S.W.3d at 712.[1]

---

1. In this case, DART and The T claim they are protected by "governmental immunity." Case law analyzing whether DART enjoys immunity uses interchangeably the terms "sovereign immunity" and "governmental immunity." *Whitley,* 104 S.W.3d at 542; *DART v. Willis,* 163 S.W.3d 814, 816 (Tex.App.-Dallas 2005, pet. denied); *DART v. Edwards,* 171 S.W.3d 584, 587 (Tex.App.-Dallas 2005, pet. denied). However, these are distinct concepts. *Taylor,* 106 S.W.3d at 694 n. 3. "Sov-

ereign immunity" refers to the state's immunity from suit and liability. *Id.* Its protection extends not only to the state, but also to the varying divisions of state government, including agencies, boards, hospitals, and universities. *Id.* "Governmental immunity" protects political subdivisions of the state, including counties, cities, and school districts. *Id.; see also Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex.2006).

Although Oncor does not disagree with the general propositions of governmental immunity asserted by DART and The T, Oncor argues governmental immunity does not exist in this condemnation case because the suit is not one seeking money damages. *See IT–Davy,* 74 S.W.3d at 853. Also, Oncor reminds us that governmental immunity does not apply to some declaratory judgment proceedings that do not attempt to subject the government to monetary damages. *See id.* at 855; *see also City of El Paso v. Heinrich,* 284 S.W.3d 366, 368 (Tex.2009) (involving ultra vires acts of state officials). On that premise, Oncor asserts eminent domain is analogous to a declaratory judgment action because the condemnation suit does not seek to subject DART and The T to liability and, therefore, governmental immunity is not implicated.

We cannot agree with Oncor's contention that governmental immunity is not implicated in this condemnation case. Indeed, *IT–Davy* does state, "Sovereign immunity protects the State from lawsuits for money damages." *IT–Davy,* 74 S.W.3d at 853. However, that case does not hold that only suits for money damages are barred. Rather, that court noted "declaratory-judgment suits against state officials, seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" that implicate the "sovereign immunity" doctrine because such suits "attempt to control state action by imposing liability on the State." *Id.* at 855–56. Further, more recent cases have clarified that liability is not the sole controlling consideration with regard to applicability of immunity in declaratory judgment cases. *See City of Dallas v. Turley,* 316 S.W.3d 762, 768, 771 (Tex.App.-Dallas 2010, pet. filed) (citing *Heinrich,* 284 S.W.3d at 372–73).

In a September 10, 2010 amicus curiae brief submitted in support of Oncor's motion for rehearing, Centerpoint Energy Houston Electric, LLC asserts an additional argument not raised by Oncor regarding inapplicability of governmental immunity. Our dissenting colleague relies, in part, upon arguments made by Centerpoint. Specifically, Centerpoint contends " '*in rem*' condemnation suits do not implicate governmental immunity concerns." According to Centerpoint, "a condemnation suit is not a suit for monetary damages or even one of *in personam* liability." Rather, Centerpoint asserts, "[a] condemnation proceeding is an *in rem* matter and is not a taking of rights of persons in an ordinary sense but is an appropriation of physical properties." Centerpoint contends Oncor named DART and The T as parties only because "the [Texas Property Code] required the joinder of each of them as an 'owner' of the subject property." Therefore, Centerpoint argues, the "policies behind sovereign immunity are irrelevant in this case." Centerpoint cites no authority directly on point in support of its position.

 "A motion for rehearing does not afford a party an opportunity to raise new issues after the case has been briefed, argued, and decided on other grounds, unless the error is fundamental." *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 747 (Tex.App.-Dallas 2007, pet. denied). "Fundamental error exists 'in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or Constitution of Texas.' " *Id.* (quoting *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982)). Centerpoint argues the result in this case "is opposite from the public policy in Texas and the statutory grant of eminent domain to electric companies" and "would be detri-

mental" to customers of electric utilities in Texas. However, even assuming, without deciding, that Centerpoint's *"in rem"* argument can be properly addressed at this point, we are not persuaded by that argument.

It is clear that a suit against the state for condemnation of an easement is a suit to divest the state of property with compensation to be declared by a court. *See* TEX. PROP.CODE ANN. §§ 21.001–.065 (West 2000, 2004, & Supp.2010). Recovery of costs against the government is available in certain condemnation cases. *See id.* §§ 21.042–.047. We cannot see that condemnation actions are free from the doctrine of governmental immunity, while other similar actions against the state are barred by immunity. It is significant to us that the state is immune from a suit to declare the rights to title and possession of real property, even where such suit does not involve money damages. *See Porretto v. Patterson,* 251 S.W.3d 701, 708 (Tex. App.-Houston [1st Dist.] 2007, no pet.) (citing *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (1961) ("[w]hen in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained")); *see also Turley,* 316 S.W.3d at 773; *State v. BP Am. Prod. Co.,* 290 S.W.3d 345, 354 (Tex.App.-Austin 2009, pet. filed); *Koch v. Tex. Gen. Land Office,* 273 S.W.3d 451, 455 (Tex.App.-Austin 2008, pet. filed); *Walsh v. Univ. of Tex.,* 169 S.W.2d 993, 994 (Tex.Civ.App.-El Paso 1942, writ ref'd); *cf. Martin v. Amerman,* 133 S.W.3d 262, 267 (Tex.2004) (statute governing trespass to try title does not provide for attorney's fees). Where a plaintiff prevails in a trespass to try title case against a government entity, the effect is to deny the government the right to title or possession of property. *See Porretto,* 251 S.W.3d at 708. Likewise, a suit

in which a successful condemnor takes title or easement rights from a government entity upon paying the ordered price results in materially the same effect. *See* TEX. PROP.CODE ANN. §§ 21.041–.065. Moreover, through such effect, both types of suits "seek to alter government policy," rather than to enforce existing policy. *Cf. Heinrich,* 284 S.W.3d at 372 (where ultra vires suit did not seek to alter government policy, but rather to enforce existing policy, such suit did not attempt to exert control over state and therefore was not subject to governmental immunity); *Short v. W.T. Carter & Bro.,* 133 Tex. 202, 126 S.W.2d 953, 962 (1938) (suit against government entity to enjoin it from granting lease as to certain land was suit to "control the action of the State" and therefore was barred by governmental immunity). Neither the record nor the arguments of Oncor and the amicus curiae demonstrate how actions to condemn the real property of the state can be placed in a category of suits, by themselves, that does not implicate governmental immunity. Because the law is clear that the state is immune from suits to declare the rights to title and possession of real property even where money damages and attorney's fees are not involved, we cannot conclude, without guidance from the legislature or supreme court, that condemnation actions such as the one at issue do not implicate governmental immunity.

Finally, Oncor contends the doctrine of governmental immunity does not apply to condemnation because the "paramount importance rule" may be applied in order to determine the rights to public property being condemned for a public purpose. *See Canyon Reg'l Water Auth. v. Guadalupe–Blanco River Auth.,* 258 S.W.3d 613, 617 (Tex.2008); *Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 882 (Tex. 1973); *Sabine & E. Tex. Ry. Co. v. Gulf & Interstate Ry. Co.,* 92 Tex. 162, 46 S.W.

784, 786 (1898). Citing *Canyon Regional*, Oncor argues that when there are two competing public uses, which Oncor suggests exist in this case, the proper standard is to determine whether the taking will practically destroy the public purpose of the property. However, once again, we cannot agree with Oncor. In the *Canyon Regional*, *Austin Independent School District*, and *Sabine* cases cited by Oncor, immunity was not raised by any party nor was it addressed by the courts writing the opinions. Accordingly, we cannot construe the *Canyon Regional* line of cases to provide the necessary precedential authority for Oncor to proceed with condemnation of the property of DART and The T.

### B. Legislative Waiver of Governmental Immunity Based on Granting Oncor Condemnation Rights

■ In its next argument, Oncor contends (1) "the precodified eminent domain law gave Oncor the power to condemn public land"; (2) "[t]he power to condemn public land necessarily waives governmental immunity"; (3) "[a]fter the [case law] had interpreted the power to condemn the property of 'any person or corporation' as including the power to condemn public land," the legislature "reenacted, for electric companies such as Oncor, the same statutory language," thus adopting that construction into the precodified statute; and (4) "codification of the eminent domain law into the Utilities Code was intended to be nonsubstantive" and "to not change the precodified law." Further, Oncor asserts section 311.034 does not prevent the waiver of governmental immunity in this case because (1) section 311.034 was meant to address codified statutes where the broad definition of "person" was being used to change the pre-existing law, which is not the situation here, and (2) the context of section 181.004 "indicates no other reason-

able construction than that governmental immunity is waived."

DART and The T assert generally that their immunity is not waived by Oncor's eminent domain power. They contend the cases cited by Oncor are inapplicable and/or superseded by section 311.034. Further, DART and The T argue that although the language of section 181.004 provides condemnation power in general terms, that language does not clearly and unambiguously identify waiver of immunity.

In support of its contention that "the precodified eminent domain law gave Oncor the power to condemn public land," Oncor cites *Humble Pipe Line Co. v. State*, 2 S.W.2d 1018 (Tex.Civ.App.-Austin 1928, writ ref'd). That case involved a lawsuit by the state to prevent Humble Pipe Line Company ("Humble"), a "common carrier pipe line corporation," from laying pipes "across and under the beds and bottoms of public bays and inlets" belonging to the state. *Id.* at 1018–19. Following the trial court's determination that such laying of pipe lines was not authorized by statute, Humble appealed. *Id.* at 1019. The statutes at issue included articles 1495, 1496, 1497, 6018, 6020, and 6022 of the 1925 Revised Statutes, which the court of civil appeals stated provided, *inter alia*, that Humble had the right of eminent domain "to appropriate 'lands and property . . . of any persons or corporation . . . as may be necessary to the purposes of [Humble].' " *Id.* The court of civil appeals cited three cases construing what it described as "similar and analogous" statutes regarding "common carrier railroad corporations" and "public service irrigation corporations." *Id.* The court stated those cases held that statutes granting such corporations the right of eminent domain to appropriate private land "by necessary implication" granted such corporations power to

appropriate public land, even without express statutory authority. *Id.* The court reasoned those cases were decided long before the enactment of the pipe line statutes at issue, and the legislature was presumed to have taken notice of those cases as part of the "law of the land" when it passed the pipe line statutes. *Id.* Therefore, the court concluded, the "analogous pipe line statutes" at issue granted Humble the right to condemn public land "by necessary implication." *Id.*

We cannot agree with Oncor that *Humble Pipe Line* supports its assertion that "[t]he precodified law was that Oncor had the right to condemn public land." Of course, we see Oncor's argument here to be that no waiver of governmental immunity need be expressly stated in the statute if the statute otherwise establishes the power to condemn public property. However, neither *Humble Pipe Line* nor the arguments based upon it address the longstanding mandate from the Texas Legislature and the Texas Supreme Court that a waiver of governmental immunity in a statute must be clearly and unambiguously stated. *See* Tex. Gov't Code Ann. § 311.034; *Taylor,* 106 S.W.3d at 697; *IT–Davy,* 74 S.W.3d at 857.

Further, *Humble Pipe Line* involved common carrier statutes that are now codified in the Texas Natural Resources Code. *See* Tex. Nat. Res.Code Ann. §§ 111.019–.022 (West 2001). The predecessor to section 181.004, the utility statute at issue here, was article 1436 of the 1925 Revised Statutes.[2] Although article 1436 used certain language similar to that in the common carrier statutes at issue in *Humble Pipe Line* and empowered electric corporations to appropriate the property of "any person or corporation," article 1436 was not cited or addressed in *Humble Pipe Line.* Thus, we cannot agree with Oncor's assertion that the court in *Humble Pipe Line* held "the statutes, including articles 1435 and 1436, granted the right to condemn public lands." Oncor cites no other cases in support of its proposition that the precodified law gave electric corporations the right to condemn public land, and we have found none.

Additionally, Oncor asserts *Fort Worth & Western Railroad Co. v. Enbridge Gathering,* 298 S.W.3d 392, 395 (Tex.App.-Fort Worth 2009, no pet.), "hold[s] that the statutory power to condemn the property of *any person or corporation* includes the power to condemn property belonging to the state and governmental entities, *i.e.,* public property." (emphasis original). In *Enbridge,* a gas corporation sought to condemn property of a rail district pursuant to section 181.004[3] in order to place a pipeline beneath a railroad track. *Enbridge,* 298 S.W.3d at 397–98. Based on the language of the Texas Rail District Act,[4] not cited here by Oncor as being

---

**2.** *See* Act of Mar. 25, 1911, 32nd Leg., R.S., ch. 111, § 4, 1911 Tex. Gen. Laws 228, 229, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, 1997 Tex. Gen. Laws 713, 983 (current version at Tex. Util.Code Ann. § 181.004). Article 1436 provided in part that "a corporation for the purpose of generating, manufacturing, transporting and selling gas, electrical current and power" in Texas "shall have the right and power to enter upon, condemn and appropriate the lands, right of way, easements and property of any person or corporation, and shall have the right to erect its lines over and across any public road, railroad, railroad right of way, interurban railroad, street railroad, canal or stream in this State, any street or alley of any incorporated city or town in this State with the consent and under the direction of the governing body of such city or town." *Id.*

**3.** Section 181.004 applies to "[a] gas or electric corporation." *See* Tex. Util.Code Ann. § 181.004.

**4.** *See* Tex Rev.Civ. Stat. Ann. art. 6550c, § 5(a); *id.* § 1(5) (West Supp.2010).

pertinent, the court concluded the rail district was a "person" pursuant to section 311.005 of the Code Construction Act and, therefore, its property could be condemned under section 181.004. *Id.* at 398. Then, the court addressed whether the applicable version of utilities code section 181.005, which specifically stated that gas lines could be laid "over and across" a railway, also gave the gas corporation the right to lay pipelines "under" the rail district's tracks.[5] *Id.* The court examined (1) the history of section 181.005, (2) the legislature's objectives for section 181.005 and its predecessor, article 1436, and (3) the circumstances under which both versions of the statutes were enacted. *Id.* at 398–99. Based on that examination, the court concluded that construing the utilities code to exclude placement of gas pipelines under a railroad would "thwart the purpose of the statute." *Id.* at 399. Then, the court interpreted section 181.005 to authorize placing of a pipeline not only "over and across," which language was in the statute, but also interpreted the section to include authority to construct a pipeline "under" a railroad. The term "under" was not in the statute. *Id.*

Although Oncor cites *Enbridge* for the proposition that under the utilities code, "an electric corporation can condemn public property," Oncor specifically asserts in its brief on appeal that it "is not relying on the definition of 'person' in section 311.005 as the basis of a waiver of governmental immunity." As noted above, the Second Court of Appeals in Fort Worth determined the rail district constituted a "person" under section 311.005 of the Code Construction Act, but that court did not address section 311.034 and the relation-

ship of "person" and waiver of governmental immunity. Additionally, Oncor asserts the court in *Enbridge* "found by necessary implication, the grant of a power necessary and proper to the execution of the power expressly granted" in construing the utilities code to include placement of gas pipelines "under" railroad tracks. However, Oncor does not explain or discuss how such implication, effected by the Second Court of Appeals adding the word "under" not found in section 181.005, provides any basis for its contention that *Enbridge* "hold[s] that the statutory power to condemn the property of *any person or corporation* includes the power to condemn property belonging to the state and governmental entities, *i.e.*, public property." (emphasis original). We cannot agree *Enbridge* supports Oncor's contention.

Next, we address together Oncor's arguments that (1) "[a]fter the [case law] had interpreted the power to condemn the property of 'any person or corporation' as including the power to condemn public land," the legislature "reenacted, for electric companies such as Oncor, the same statutory language," thus adopting that construction into the precodified statute, and (2) "codification of the eminent domain law into the Utilities Code was intended to be nonsubstantive" and "to not change the precodified law." In support of those contentions, Oncor argues that "[a]fter the *Humble Pipe Line* case had interpreted the power to condemn the property of 'any person or corporation' as including the power to condemn public land," the legislature "reenacted, for electric companies such as Oncor, the same statutory language giving them the power to condemn the property of any person or corpora-

---

5. The applicable version of section 181.005 provided, "A gas corporation has the right to lay and maintain lines over and across a public road, a railroad, railroad right-of-way, an interurban railroad, a street railroad, a canal or stream, or a municipal street or alley." *See Enbridge*, 298 S.W.3d at 398.

tion." According to Oncor, it is presumed the legislature is aware of the courts' construction of the laws it enacts, and "'the Legislature must be regarded as intending statutes, when repeatedly reenacted, as in the case here, to be given that interpretation which has been settled by the courts.'" (quoting *Wich v. Fleming*, 652 S.W.2d 353, 355 (Tex.1983); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex.1968)). However, unlike *Wich* and *Marmon*, this case is not one in which a statute was "repeatedly reenacted." Rather, as described above, *Humble Pipe Line* involved pipeline statutes and did not address either article 1436, the precursor to the statute at issue here, or the issue of governmental immunity. Thus, we conclude Oncor's legislative reenactment argument is inapplicable in this case.

In a similar vein, Oncor contends that because "[t]he legislative act that created the Texas Utilities Code specifically provided that codification was not intended to change existing substantive law," corporations such as Oncor "continue" to be "empowered to condemn public property." However, that argument, like the other made above, is dependent upon Oncor's assertion that *Humble Pipe Line* granted Oncor "the right to condemn public lands." As described above, we cannot agree with that assertion. Therefore, we cannot agree with Oncor on its contention that codification of "existing substantive law" allowed Oncor to condemn public property.

Now, we address Oncor's assertion that section 311.034 does not prevent the waiver of governmental immunity in this case. Oncor asserts two arguments. First, Oncor contends section 311.034 was intended "to prevent the Code Construction Act definition of 'person' from being used to find a waiver of governmental immunity when no such waiver existed in the precodified statute." In this case, Oncor argues, a waiver

of governmental immunity did exist in the precodified statute because (1) the court in *Humble Pipe Line* held "the statutes, including articles 1435 and 1436, granted the right to condemn public lands" and (2) a legislative grant of the power to condemn public land necessarily waives governmental immunity. However, as described above, Oncor cites no cases that support its proposition that the precodified law gave electric corporations the right to condemn public land, and we have found none. Importantly, no clear and unambiguous waiver of governmental immunity has been declared to be present in the relevant statutes applicable to electric corporations. *See Taylor,* 106 S.W.3d at 697; *IT–Davy,* 74 S.W.3d at 857. We cannot conclude, as asserted by Oncor, that the precodified law with respect to electric corporations included a waiver of governmental immunity. Accordingly, we decide against Oncor on its argument that "[f]inding a waiver of governmental immunity in this case will uphold, not overturn, the law that existed before the Utilities Code was enacted."

Oncor asserts "[t]he second reason that section 311.034 does not prevent a waiver in this case is found in the last phrase of that section: 'unless the context of the statute indicates no other reasonable construction.'" *See* Tex. Gov't Code Ann. § 311.034. According to Oncor,

> [Section 181.004] provides that an electric corporation may condemn the property of "any person or corporation." This is the same language the legislature has used since 1911 and which has been held to include the power to condemn public land. The eminent domain provision and the remainder of Chapter 181 of the Utilities Code, including the definition of "person" incorporated from the Government Code, indicate no reasonable construction other than a waiver of governmental immunity.

(citation omitted). Again, Oncor cites *Humble Pipe Line* and *Enbridge* in support of its proposition, and again, we conclude Oncor's reliance on those cases is misplaced. Those cases did not address governmental immunity, and thus cannot be construed as concluding any legislative intent regarding such immunity. *See Enbridge*, 298 S.W.3d at 392; *Humble Pipe Line*, 2 S.W.2d at 1018. Oncor cites *Enbridge* for its assertion that "[t]he broad powers given to Oncor under Section 181.004 indicate that the legislature did not intend for public land to create an impassable barrier that Oncor cannot cross." However, the portion of the *Enbridge* analysis cited by Oncor pertains to the court's holding as to the method of placement of lines, *i.e.*, inserting the word "under" into section 181.005 to empower the gas corporation to lay pipe under a railroad versus over or across it. *See Enbridge*, 298 S.W.3d at 399. That is not at issue in this case. Thus, neither *Humble Pipe Line* nor *Enbridge* is dispositive here. We are not persuaded by Oncor's argument that the statutes at issue "indicate no reasonable construction other than a waiver of governmental immunity."

Finally, we address Oncor's argument that "[a] proper analysis of the *Taylor* factors indicates that the legislature did clearly and unambiguously waive governmental immunity in Section 181.004." *See Taylor*, 106 S.W.3d at 697–98. We disagree with Oncor. Our analysis of the *Taylor* factors confirms the conclusion we reached above that the legislature has not clearly and unambiguously waived governmental immunity in section 181.004.

 As acknowledged by Oncor, the factors set out by the supreme court in *Taylor* are not conclusive, but rather are "aids to help guide our analysis" in determining whether the legislature has "clearly and unambiguously" waived immunity. *Id.*

at 697. The first step in the *Taylor* analysis is to consider whether the statute waives immunity "beyond doubt." *Id.* One example of such waiver is where "the provision in question would be meaningless unless immunity were waived." *Id.* Conversely, the fact that an act remains viable despite the retention of immunity is one indication the legislature did not intend to waive immunity. *Id.* at 700. Oncor argues that by "reenacting the language" of section 181.004 after *Humble Pipe Line* construed "identical" language to include the power to condemn public land, "the legislature has clearly and unambiguously indicated that Section 181.004 includes the power to condemn public land." Oncor contends "[t]his legislative grant is made meaningless if governmental entities such as Appellants can refuse to agree on damages and then claim governmental immunity to avoid a condemnation proceeding." However, as described above, we cannot agree with Oncor's assertion that the court in *Humble Pipe Line* held "the statutes, including articles 1435 and 1436, granted the right to condemn public lands." The dissent, like Oncor, looks only at whether governmental immunity would render section 181.004 "meaningless" in light of Oncor's alleged power to condemn public land. We do not believe this is the proper analysis. *See id.* *Taylor* cites only one example where the court found a provision would be meaningless unless immunity were waived. *Id.* In that case, *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 8 (Tex.2000), the court reasoned that by designating the individual state agency as the "employer" for purposes of an anti-retaliation statute, the legislature contemplated that state agencies would be amenable to anti-retaliation claims. Section 181.004 contains no such specific designation. *See* TEX. UTIL.CODE ANN. § 181.004. Further, the viability of section 181.004 remains despite retention of immunity, as Oncor can

condemn non-governmental property pursuant to that section.

Our second step is to consider whether the text and history of the statute leave room for doubt as to whether the legislature intended waiver. *Taylor*, 106 S.W.3d at 697. Once again, Oncor cites *Humble Pipe Line* in support of the proposition that it has the power to condemn public land. Also, Oncor cites *Montgomery County*, 262 S.W.3d at 443, in which the court concluded that a specific statutory grant of the power to condemn public land permitted a county to "proceed against other governmental entities using that public land." However, as described above, unlike *Montgomery County*, the case before us does not involve a specific statutory grant of power to condemn public land. On this record, and in light of the discussion above, we cannot agree with Oncor that "the text and history of the statute do not leave room for doubt that immunity was waived." As stated in *Taylor*, "we generally resolve ambiguities by retaining immunity." *Taylor*, 106 S.W.3d at 697.

The third step is to consider whether the legislature requires that the state be joined in a lawsuit for which immunity would otherwise attach. *Id.* at 697–98. Oncor argues chapter 21 of the Texas Property Code "requires that property owners be made parties to condemnation proceedings, and it makes no exception for landowners who happen to be governmental entities." According to Oncor, "[t]he provisions of the Property Code would be nullified if every governmental entity could defeat Oncor's power to condemn public property through governmental immunity." In support of its argument, Oncor cites *Texas Education Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex.1994), in which the supreme court concluded the Declaratory Judgment Act, which specifically re-

quired governmental entities to be joined or notified in suits challenging ordinances or statutes, necessarily waived governmental immunity for awards of attorney fees. However, even assuming without deciding that Oncor has properly stated the requirements of the property code, Oncor's argument once again presumes section 181.004 clearly and unambiguously states public property may be condemned. As described above, we cannot agree with that proposition. Further, no provision of section 181.004 specifically requires the state to be a party to any condemnation proceedings. *See* Tex. Util.Code Ann. § 181.004.

The fourth and last step is to consider whether section 181.004 objectively limits the liability of DART and The T. *Taylor*, 106 S.W.3d at 698. Oncor contends appellants have "zero liability" in this case, and that "[a]s the condemnees, they will receive damages, not pay them." Therefore, Oncor argues, "[a]ppellants' liability is not only objectively, but absolutely, limited in the context of the underlying condemnation proceeding." However, as described above, the case law does not hold that only suits for money damages can implicate governmental immunity. *See IT–Davy*, 74 S.W.3d at 855–56 ("declaratory-judgment suits against state officials, seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" that implicate the "sovereign immunity" doctrine because such suits "attempt to control state action by imposing liability on the State"); *see also Taylor*, 106 S.W.3d at 702 (fact that fourth consideration weighed in favor of appellee was "not dispositive"). Based on consideration of the "aids to help guide our analysis" set out in *Taylor*, we cannot conclude the legislature clearly and unambiguously waived governmental immunity in section 181.004. *See Taylor*, 106 S.W.3d at 697.

As the foregoing illustrates, while Oncor was given a specific statutory grant to condemn property owned by a "corporation" or "person," the legislature specifically stated that the use of the word "person" does not waive governmental immunity and there is no clear and unambiguous waiver of any governmental immunity. *See* TEX. UTIL.CODE ANN. § 181.004; TEX. GOV'T CODE ANN. § 311.034; *cf. Montgomery Cnty.*, 262 S.W.3d at 442–43. We conclude that DART and The T's governmental immunity rights were not waived by the legislature's grant of eminent domain power to Oncor.

**C. Waiver of Governmental Immunity and Preemption of Governmental Immunity Based on Oncor's Public Utility Commission Proceedings**

■ Next, we address Oncor's three arguments claiming the governmental immunity of DART and The T was waived or preempted by the PUC's statutory power exercised in the regulatory proceeding as to the location of Oncor's transmission line. First, Oncor contends the governmental immunity of DART and The T is preempted by the statutory powers of the PUC to comprehensively regulate Oncor. Second, Oncor contends DART and The T waived governmental immunity by not challenging the routing of Oncor's electrical transmission line before the PUC. Last, Oncor argues DART and The T's assertion of immunity is a collateral attack on the PUC's order and is in irreconcilable conflict with the PUC's order.

In response, DART and The T argue that the PUC's regulatory power over Oncor does not preempt claims of governmental immunity, and in the regulatory proceeding the PUC did not purport to determine there was a waiver of immunity. Also, DART and The T argue their failure to participate in the PUC proceedings, aside from any issues about whether they received proper notice, did not amount to a waiver of immunity. Finally, DART and The T assert Oncor's collateral attack argument is "inaccurate" because by the assertion of immunity, DART and The T do not seek to re-route Oncor's transmission line nor prohibit Oncor from building the line in accordance with the PUC Order.

■ We cannot agree with Oncor on these arguments. The source of the PUC's power is clearly stated in the Public Utility Regulatory Act ("PURA"), which states in part, "The purpose of this subtitle is to establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations and services that are just and reasonable to the consumers and to the electric utilities." TEX. UTIL.CODE ANN. § 31.001(a) (West 2007); *see In re Entergy Corp.*, 142 S.W.3d 316, 322–23 (Tex.2004). That stated "purpose" of the PURA and the statutory sections that follow identify no power of the PUC to preempt any governmental immunity of DART and The T. *Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex.2005) (an administrative agency may exercise only those powers that the legislature confers upon it in clear and express language and has no inherent authority of its own); *see also IT–Davy*, 74 S.W.3d at 857 ("it is the Legislature's sole province to waive or abrogate sovereign immunity"). Nothing in the record shows the PUC attempted to exercise any power to declare the governmental immunity of DART and The T was waived. Additionally, no authority is cited to us demonstrating that DART and The T could have waived their governmental immunity by not participating in the PUC proceeding. *See IT–Davy*, 74 S.W.3d at 856–57 (there is no waiver-by-conduct exception to governmental immunity); *see also Koseoglu*, 233 S.W.3d at 840 (Texas

Supreme Court has consistently rejected waiver-by-conduct argument).

■ Oncor supports its assertion that DART and The T are collaterally attacking the PUC order by raising governmental immunity by citing *Public Utility Commission of Texas v. Allcomm Long Distance, Inc.,* 902 S.W.2d 662, 666 (Tex.App.-Austin 1995, writ denied). Reliance on that case is misplaced. The Third Court of Appeals held in *Allcomm Long Distance* that an agency's final order is immune from collateral attack, like the final judgment of a court. *Id.* However, in this case the final order of the PUC granted Oncor's application to construct a transmission line. In so doing, the PUC found in part in its order, "[Oncor] has not acquired any right-of-way for the Proposed Transmission Line." So, condemnation or any other methods of acquisition were not addressed by the PUC. That was left for later action by Oncor. We agree with DART and The T that by raising governmental immunity as a defense to the condemnation action, they do not seek to re-route the line or interfere with the PUC order.

■ Finally, we address the position of Oncor that the assertion of governmental immunity by DART and The T is in conflict with the PUC's exclusive jurisdiction to regulate Oncor's rates and services. Oncor cites three cases to support this contention. *City of Allen v. Pub. Util. Comm'n,* 161 S.W.3d 195 (Tex.App.-Austin 2005, no pet.); *In re Entergy Corp.,* 142 S.W.3d at 316; *Burlington N. & Santa Fe Ry. Co. v. City of Houston,* 171 S.W.3d 240 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In the *City of Allen* case, the City of Allen enacted ordinances requiring Oncor to put certain lines underground, to use steel or concrete poles instead of wood for overhead lines, and to screen surface facilities. Those ordinances were found by the Third Court of Appeals to conflict with the PUC's comprehensive regulation scheme. *City of Allen,* 161 S.W.3d at 208–09. *In re Entergy Corp.* involved a dispute between two regulated electric utilities about an alleged breach of a merger agreement that was approved in a PUC proceeding. The Texas Supreme Court upheld dismissal of the district court lawsuit, concluding that disputes concerning a PUC-approved merger agreement are subject to initial review by the PUC. *In re Entergy Corp.,* 142 S.W.3d at 323. In the *Burlington* case, the Fourteenth Court of Appeals concluded a railroad was empowered to condemn a city's property because of federal preemption. *Burlington,* 171 S.W.3d at 248–49. We cannot agree these cases demonstrate the assertion of governmental immunity interferes with the PUC's exclusive jurisdiction. As noted above, the PUC order authorizing Oncor's transmission line specifically recognized Oncor had not yet acquired any "right-of-way." On this record, we conclude Oncor's attempt to acquire part of its right-of-way in its condemnation action and the assertion of governmental immunity by DART and The T do not interfere with the jurisdiction of the PUC.

## IV. CONCLUSION

Premised on the foregoing, we reverse the trial court's denial of DART and The T's plea to the jurisdiction. Because we have found that this suit is barred by governmental immunity, we render judgment dismissing Oncor's suit with prejudice. *See Harris Cnty.,* 136 S.W.3d at 636.

MURPHY, J., dissenting.

Dissenting Opinion By Justice MURPHY.

Oncor argues that the doctrine of governmental immunity does not apply to eminent domain proceedings because the

statutory and mandatory scheme for condemnation does not subject the State to liability. It also argues that a grant of power to condemn public land necessarily waives governmental immunity. Because I agree that Oncor's proceeding does not implicate the governmental immunity doctrine, I would grant Oncor's motion for rehearing and affirm the trial court's order denying DART and The T's plea to the jurisdiction. Assuming governmental immunity were implicated, I would conclude the legislature has waived immunity.

### Governmental Immunity

In Oncor's live pleading, it seeks aerial easement rights from DART and The T pursuant to chapter 21 of the Texas Property Code and section 181.004 of the Texas Utility Code. In its prayer for relief, Oncor seeks appointment of special commissioners to hear its condemnation petition and asks that upon payment into the registry of the amount awarded the landowners (DART and The T), it receive a writ of possession necessary to enforce the decision of the special commissioners. Oncor requests costs of suit and "such other and further orders, writs and relief, both general and special, legal and equitable, to which it is entitled."

Governmental immunity from suit does not protect against all legal proceedings. The Supreme Court of Texas has characterized the doctrine of governmental immunity as protecting the State from lawsuits for money damages. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002). In *IT–Davy,* a declaratory judgment suit, the court also distinguished impermissible claims against a governmental entity as those seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities because those suits attempt to control state action by imposing liability on the governmental unit. *See id.* at 855–56.

Oncor's suit, in pleading and substance, seeks relief against DART and The T to determine the parties' rights in the property for which Oncor seeks an aerial easement. As such, it is a quasi in rem action. *See Bodine v. Webb,* 992 S.W.2d 672, 676 (Tex.App.-Austin 1999, pet. denied) (quasi in rem action affects interests of particular persons in property). Neither an in rem nor a quasi in rem proceeding imposes personal liability on the property owner. *Id.; see also HMS Aviation v. Layale Enters., S.A.,* 149 S.W.3d 182, 187 n. 1 (Tex.App.-Fort Worth 2004, no pet.) ("The effect of a judgment in an in rem or quasi in rem case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner."). Thus, Oncor's suit cannot be characterized as an impermissible action seeking to establish a contract's validity, to enforce performance under a contract, to impose contractual liabilities, or otherwise "attempt to control state action by imposing liability on the State." *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009) (quoting *IT–Davy,* 74 S.W.3d at 855–56). That Oncor seeks recovery of its costs of suit does not convert its action into one attempting to impose liability on DART and The T. *See City of Dallas v. Jones,* 331 S.W.3d 781, 785 (Tex.App.-Dallas 2010, no pet. h.) (confirming request for declaratory judgment and attorneys' fees did not implicate immunity). Governmental immunity therefore is not implicated.

### Waiver

If governmental immunity were implicated in this action, I would conclude such immunity has been waived. Gas and electric corporations have long had the right to condemn public land for purposes of sup-

plying power to individuals, the public, and municipalities. *See Humble Pipe Line Co. v. State*, 2 S.W.2d 1018, 1022 (Tex.Civ. App.-Austin 1928, writ ref'd) (recognizing rights of public utility and service corporations to eminent domain over public lands; those statutory rights preceded pipeline statutes at issue); *see also Lo–Vaca Gathering Co. v. Mo.-Kan.-Tex.R.R.*, 476 S.W.2d 732, 739 (Tex.Civ.App.-Austin 1972, writ ref'd n.r.e.) (legislature gave utilities and pipeline corporations extraordinary power of eminent domain to ensure the ability to cross public lands). That power has not been changed since first enacted, and it is presumed the legislature has adopted the courts' construction of the laws it enacts. *See Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) ("It is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation.").

Section 181.004 of the codified utilities law expressly allows Oncor the right to condemn property of any person or corporation. Tex. Util.Code Ann. § 181.004 (West 2007). The Code Construction Act governs interpretation of the Texas Utilities Code, and we are to apply the code definitions when interpreting statutes "unless the statute or context in which the word or phrase is used requires a different definition." Tex. Gov't Code Ann. § 311.005 (West 2005). "Person" includes a "government or governmental subdivision or agency...." *Id.* § 311.005(2); *see also Fort Worth & W. R.R. v. Enbridge Gathering (NE Tex. Liquids), L.P.*, 298 S.W.3d 392, 397 (Tex.App.-Fort Worth 2009, no pet.) (section 181.004 includes right of gas corporation to condemn property of rail district as governmental entity; construction limited to case-specific facts).

The utilities code also includes the right of Oncor to "construct, maintain, and operate lines over, under, across, on, or along a state highway, a county road, a municipal street or alley, or other public property in a municipality." Tex. Util.Code Ann. § 181.042 (West 2007).

Pursuant to section 311.034 of the Code Construction Act, we are informed that use of the term "person" in a statute is not a waiver of immunity. Tex. Gov't Code Ann. § 311.034 (West Supp.2010). That same section emphasizes that this non-waiver provision is to help preserve the legislature's interest in managing state fiscal matters. *Id.* These provisions are consistent with our supreme court decisions emphasizing that suits seeking to impose liability on a governmental unit are suits against the State, and are thus barred, and that waiver of governmental immunity requires clear and unambiguous language. *See, e.g., IT–Davy*, 74 S.W.3d at 854, 856. Yet the section 311.034 prescription that use of the term "person" in a statute does not waive immunity should not be used to implicate governmental immunity when, as here, utilities have had condemnation rights of public lands for almost 100 years. That construction would defeat the purpose of section 311.034—not allowing a definition alone to create or waive legal rights when no such interpretation had existed previously. *See, e.g., City of La-Porte v. Barfield*, 898 S.W.2d 288, 294 (Tex.1995) (Code Construction Act definition of "person" to include governmental entities after 1985 not intended to change substantive law and waive governmental immunity not previously waived).

When, as here, the legislature has not provided "magic words" to waive immunity, the supreme court has identified four factors to use as aids to help guide our analysis in determining whether the legislature has clearly and unambiguously

waived immunity: (1) whether a statutory provision would be "meaningless" unless immunity is waived; (2) whether the text and history of a statute leave room for doubt of intended waiver; (3) whether the legislature required the State to be joined in a lawsuit; and (4) whether the statute provides an objective limit on the State's potential liability. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex.2003).

As to the first factor, Oncor's power to condemn public land pursuant to section 181.004, as interpreted since at least 1928, would be rendered meaningless if governmental entities can refuse to participate and avoid a condemnation proceeding based on immunity. *See, e.g., State v. Montgomery Cnty.*, 262 S.W.3d 439, 442–43 (Tex.App.-Beaumont 2008, no pet.) (legislative grant of power to condemn public land waived immunity). Second, the utilities code and its history leave no room for doubt that Oncor has the right to condemn public land, which is a waiver of immunity. *See* Tex. Util.Code Ann. § 1.001(a) (West Supp.2010) (code adopted pursuant to program to codify laws and not intended as substantive change); *Humble Pipe Line Co.*, 2 S.W.2d at 1022 (recognizing utility and public service corporations had right for years to condemn public land); *Montgomery Cnty.*, 262 S.W.3d at 442–43 (power to condemn public land waives immunity); *see also* Tex. Gov't Code Ann. § 311.034 (use of "person" in statute not waiver of immunity "unless the context of the statute indicates no other reasonable construction"). Third, DART and The T are mandatory parties to the condemnation proceeding as landowners pursuant to chapter 21 of the Texas Property Code. *See* Tex. Prop.Code Ann. § 21.012 (West Supp.2010). When the legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the legislature has intentionally waived the State's immunity. *See Taylor*, 106 S.W.3d at 697–98. Finally, as discussed above, Oncor's suit does not seek to impose any form of liability on DART and The T— they will in fact receive payment for the aerial rights in question. Considering the history and text of section 181.004 of the utilities code and chapter 21 of the property code, as well as the *Taylor* factors, any governmental immunity implicated pursuant to Oncor's condemnation action has been waived.

For these reasons, I would conclude the trial court's order denying DART and The T's plea to the jurisdiction should be affirmed and therefore dissent.